## HENRY TRAMMELL v. NICHOLAS TRAMMELL AND OTHERS.

Where the plaintiff recovers in the action, and there is no error in the final judgment on the merits, the refusal of the Court to quash a writ of sequestration will not be revised, although the defendant may have replevied the property.

It is well settled that a general demurrer in our practice, will not be deemed to reach defective averments in pleading, which might have been cured by amendment; and see this case for averments which were held to be a sufficient averment of domicil, on general demurrer.

The general rule is undoubted, that the domicil of nativity continues until a new domicil is acquired; and that minors are generally deemed incapable of changing their domicil during their minority.

At the death of the father, his domicil remains that of his infant children.

It is true that, for some purposes, a minor may become emancipated by the consent of his parent or guardian, expressly or tacitly given.

It would be difficult, I apprehend, to maintain either upon principle or authority, that the marriage of male minors (the case of females being provided for by statute) has the effect to remove their civil disabilities.

How far the parent or guardian has the power to change the (national) domicil of the minor, so as to change the rule of succession to his property, was examined in the late case of Wheeler v. Hollis, (afterwards published in 19 Tex. R. 522.)

In this case it was held that the executor and testamentary guardian, (however it might be deemed, as between the widow of the devisee and ward, and others claiming the estate) could not be heard to controvert the rights of the plaintiffs, (who claimed as heirs under the laws of Arkansas, the original domicil of the deceased minor,) by reason of a change of domicil of the minor

to this State, effected by means of the fraudulent conduct of such executor and testamentary guardian.

Appeal from Gonzales. Tried below before the Hon. Fielding Jones.

In February, 1844, Philip Trammell departed this life, domiciled in the State of Arkansas, leaving no widow, and but one child, Nicholas, then eight or ten years of age, to whom he willed the whole of his estate. The will directed that the farm and negroes of the testator should be kept together, and the proceeds, after paying for the education of his son, and his necessary expenses, to be invested in negroes and other real estate for his son, until the latter should arrive at the age of twenty-one years. The testator appointed his brother Henry Trammell executor of his said will, and requested that he be not required to give security. The last item in the will was as follows : It is my wish that my son Nicholas be kept at one of the best colleges in the United States until he arrives at the age of twenty-one years. Same month letters testamentary were issued to said Henry, upon his taking the oath required by law, and giving bond without security. The inventory and appraisement showed thirty slaves, old and young, and other property in proportion. In May, 1844, there was an order, reciting that the letters of administration had been granted by the Clerk, in vacation, without security, and requiring said executor to give bond with sureties, within ten days, in double the appraised value of the estate, or his letters would be revoked. From this order of the Probate Court, said executor appealed to the Circuit Court. It seemed that the executor continued, nevertheless, to administer the estate. At November Term, 1846, of the Probate Court, he filed an account, charging himself with the amount of the appraisement $36,331 94, and crediting himself with money paid $3,668 36, and seven negroes that had died, appraised at $1,950, and five per cent. commission on first item ; leaving the balance in his hands. Said account was confirmed. In November, 1847, said executor obtained a general order to sell the real and personal estate, to the amount of $3,000, to pay debts ; and in February, 1848, an order to sell the real estate and the personal property, except slaves, without limit. On the 22d March, 1848, the executor returned a sale of personal property, including nineteen slaves named, and four families not named. In August, 1848, the executor was ordered, on application of a creditor, to

pay off a certain class of claims. In August, 1848, the executor was ordered to file a complete statement of the condition of the estate, with vouchers, before the next Term, upon pain of removal. On the 10th February, 1849, there was a hiring of thirty slaves, old and young, from which it must be inferred either that the previous sale of slaves was not confirmed, or that it was a hiring merely, which would correspond with the prices. At February Term, 1849, the executor applied for an order to sell the slaves belonging to said estate, or enough thereof to pay the debts; which order was refused; and an order made for the hiring of the slaves till next Term. At November Term, 1849, an application made by one Thomas Hubbard for the removal of the executor, on the ground that he was administering the estate without giving bond as the law required, and was wasting and mismanaging said estate, &c., was continued for want of sufficient notice to the executor. At February Term, 1850, said application was heard, and the facts being found to be true, the letters of said executor were vacated, and Hubbard recovered his costs. At this point the facts cease to be clear, and can only be gathered from the following statement:—

January 1st, 1855, suit commenced in the county of Gonzales, in this State, by appellees, who are the grandfather and the uncles, and children of a deceased uncle, of said Nicholas Trammell, against said Henry Trammell, to recover five slaves. The residence of some of the plaintiffs was alleged to be in Gonzales county, and of the rest in Fayette county in this State. The petition alleged "that Philip Trammell departed this life in the State of Arkansas on or about the 20th. day of February, 1844, leaving but one child, an infant named Nicholas Trammell, and left to the said infant Nicholas, by will, a large estate, consisting of lands, negroes and other property, and appointing in said will, his brother Henry Trammell, defendant hereto, now resident citizen also of the county and State first aforesaid, executor thereof. They further represent that the said Nicholas, whilst yet an infant, viz: on or about the 5th day of April, 1853, and aged about eighteen years, departed this life, leaving no children or other heirs, except your petitioners, and the defendant." "That the said Henry Trammell, so far from executing the said will of the said Philip Trammell, deceased, according to law, and distributing the property belonging to said estate amongst your petitioners, to whom the same descended upon the death of said Nicholas, illegally and fraudulently wasted and converted to his

own use a large portion of the estate aforesaid, and fled from the aforesaid State of Arkansas to the State of Texas, bringing with him a large number of the slaves belonging to the estate, viz : the number of some twenty-five or thirty, and with the view of converting the same to his own use, and cheating and defrauding your petitioners out of their just rights, has, as your petitioners are informed and believe, sold and run out of this State, or caused to be done by other persons, the greater portion of the said slaves so brought with him to Texas, and has still in his possession the following of the said slaves, five in number, viz :" (Here followed a description of the slaves sued for.) " They would further represent that by the laws of Arkansas, the whole of the estate of the said Nicholas, deceased, descended to your petitioners," &c. " That the defendant, as one of the brothers of said Philip, would be entitled to an equal part of the said estate, with his father, brothers and sisters ; but he has long since squandered and converted to his own use," &c. Wherefore plaintiffs claimed a recovery of said five slaves and the value of their hire since the death of said Nicholas. " They further represent that they believe and fear that the said defendant will run the above described and named slaves out of the limits of this State, during the pendency of this suit, and injure and ill treat and appropriate the same to his own use, so that your petitioners will be forever defrauded out of their just rights in the said property. Wherefore they ask that a writ of sequestration may issue," &c.

Affidavit by the plaintiffs, " that the matters and things as set forth in said petition, are just and true, to the best of their knowledge and belief." Bond given ; sequestration issued and levied on the slaves, and bond given by defendant to have the slaves forthcoming to abide the event of the suit.

Motion by defendant Henry Trammell, to quash the sequestration, on the ground " that the affidavit is insufficient, informal, and not in compliance with law in such case." This motion was subsequently overruled, and defendant excepted.

General demurrer to the petition. Answer by Henry Trammell, Jarrett Trammell and Amanda J. Trammell, wife of said Jarrett, praying that the said Jarrett and Amanda be made parties defendant, and that the said Jarrett, who was a son of a deceased brother of Philip Trammell, deceased, and had been joined as an infant plaintiff, suing by his next friend, be stricken from the list of plaintiffs and made a defendant, and denying all the allegations of the petition, except so far as they are specifi-

cally admitted to be true in this answer. "They admit that Philip Trammell died in the State of Arkansas in 1844, leaving but one child, a son, Nicholas Trammell; that said Philip Trammell left his said son Nicholas, by will, the said negroes mentioned in said petition, and said Nicholas became the owner of said negroes. And they further say that said Nicholas was lawfully married to Amanda J. Halloway, of the State of Arkansas; that said Nicholas and wife emigrated and removed to the State of Texas about the month of February, 1853, to live and domicil themselves in Texas, and did so live and domicil themselves in Texas, and that so living and residing in Texas, about the month of April, 1853, said Nicholas died, in Fayette county, Texas, intestate, without issue or their descendants; without brother or sister or their descendants; without father or mother; leaving the said Amanda, one of these defendants, his widow surviving; and that said Amanda, widow of said Nicholas, was and is entitled to said negroes mentioned in the petition, under the statute of descents and distribution of the State of Texas; and defendant Amanda J. Trammell says that she has since intermarried with Jarrett Trammell, mentioned as one of the plaintiffs in this suit. She further says that she is entitled to the slaves mentioned in said petition, under said statute as aforesaid." Prayer, &c. "The said defendants" propounded the following interrogatories to certain of the plaintiffs, and defendant Henry Trammell made affidavit that the answers were material to aid him in his defence, and that he knew of no other person by whom he could prove the same facts.

1st. Was or was not Amanda J. Halloway ever married? If yea, to whom, and when?

2d. Was she not married to Nicholas Trammell? If yea, when?

3d. Did or did he not, with his wife, emigrate to the State of Texas, and when, for the purpose of living and remaining?

4th. Did or did not said Nicholas Trammell, with his wife, emigrate and leave the State of Arkansas, and where did they emigrate to, and when? Did or did he not have children, father, mother, brothers or sisters?

5th. Is or is not said Nicholas living? If dead, when did he die, and where? and if dead, did or did he not leave a widow? and did he leave a child?

6th. If he left a widow, has she since been married? If yea, to whom, when, and where?

Said answer and interrogatories were filed on the 1st of May,

1855.   On the morning of the day before, which was the eighth day of the Term, there being no answer or motion on file, plaintiffs asked for judgment by default, which was refused by the Court because the case had not been regularly reached for trial, on the docket; and plaintiffs excepted.

May 2d, 1855, plaintiffs filed exceptions to so much of defendants' answer as propounded interrogatories to plaintiffs, on the ground that it was not filed until the ninth day of the Term, and after the cause had been called for trial; that the interrogatories showed upon their face, that the facts could be proved by other sources within the knowledge of the said defendant; and that the said interrogatories were not material to the defence.

Same day "came the parties by their attorneys," and the motion to strike out the interrogatories to plaintiffs was overruled; whereupon the plaintiffs were permitted to file an amended petition.

In said amendment plaintiffs alleged the probate of the will of said Philip Trammell, deceased, the appointment, &c., of said Henry Trammell as executor, "as will appear from the records of said Court; certified copies of said will and probate, and the proceedings of said Court concerning said will and succession will be shown the Court on the trial hereof. It will also be shown by said transcript of said proceedings, that the said Henry Trammell took possession of the said estate, and obtained letters testamentary; that afterwards, at the       Term of said Court, he was removed by the Court from said executorship, and after having been so removed, fled to Texas, and bought said property as aforesaid; which will also appear from said transcript of said proceedings."

And at same time defendant was permitted to file an amended answer, which was as follows :—

That the last will of said Philip Trammell devised all of his estate of every kind to his son Nicholas Trammell, and appointed defendant Henry Trammell executor of said will and testamentary guardian of said Nicholas; that said Nicholas legally intermarried with Amanda J., one of the defendants; and said Nicholas and Amanda, as husband and wife, came to Texas together and lived together as man and wife until the death of said Nicholas, who, with his wife, was domiciliated in the State of Texas at the time of his death.   And defendants further say that the defendant Henry Trammell was the testamentary guardian of said Nicholas, duly appointed as such by said Philip in

his said will; that said Henry Trammell remained and continued as such guardian until the death of said Nicholas; and that said Nicholas emigrated to Texas with the consent of said guardian to such change of domicil; and the defendant Henry Trammell and the other defendants deny all fraud in the premises, and all the allegations of the petition; and they further deny that the negroes sued for and attached ever were the property of the estate of Philip Trammell, deceased; they further deny that the plaintiffs are heirs of said Philip Trammell or Nicholas Trammell, deceased.

The demurrer to the petition was then overruled; whereupon came a jury, &c. The only testimony not already stated as facts about which there was no real controversy, was as follows: A witness testified that he "has seen in possession of said Henry in Texas, the following of said slaves" (he had previously described a number of slaves, in possession of which he had seen said defendant, as executor of Philip Trammell in Arkansas "after the death of said Philip")—Here followed a description of the slaves in controversy.—That "Nicholas Trammell died about three years since" (date of deposition not stated) "and was about eighteen years old; that he died leaving no children, nor father, nor mother, nor brother, nor sister, nor their descendants;" the relationship of the parties as alleged in the petition. The Sheriff of Gonzales county testified that he found the slaves in controversy in the possession of defendant Henry Trammell, when he went to execute the writ of sequestration; proved the value of said slaves and their hire; "on cross-examination, said he was informed Jarrett Trammell and wife live in Arkansas; that Amanda J. was generally reported to be the wife of said Jarrett; heard one of the plaintiffs say that Nicholas Trammell died in La Grange, Texas, leaving a widow, the said Amanda J.; he was going for his wife and coming back to settle. Jarrett said he was coming back from Arkansas."

Plaintiffs proved that by the laws of Arkansas, the property of an intestate, descended, subject to the payment of his debts and the widow's dowry in the following manner: to children or their descendants, in equal parts; second, if there be no children, then to the father; then to the mother; if no mother, then to the brothers and sisters or their descendants, in equal parts; third, if there be no children, nor their descendants, father, mother, brothers nor sisters nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descend-

ants, in equal parts. Plaintiffs also proved that the Courts of Probate in the several counties of the State of Arkansas have power to appoint guardians for minors, and possess the control and superintendence of them; and that such guardianship continues until the minor arrives at the age of twenty-one years, whether male or female, except that the guardianship of a female should cease on marriage.

Defendants introduced in evidence the marriage license and record of marriage of Jarrett and Amanda J. Trammell, solemnized in 1854; and called a witness who testified that Nicholas Trammell was said to have died in La Grange, and left a widow, the said Amanda J., and no children. Defendants also introduced in evidence the interrogatories appended to their answer and taken for confessed.

Plaintiff called a witness who testified that the present residence of Jarrett Trammell and wife is now in Arkansas.

The Court charged the jury as follows: If you believe from the evidence, that the negroes in question are the same originally willed by Philip Trammell to his son Nicholas; and that the said Nicholas was a minor within and in Texas or Arkansas (so in the transcript, Reps.) the property would be distributed according to the law of Arkansas; and if you believe that the plaintiffs are all the heirs of the said Nicholas, you should find for the plaintiffs. (The balance of the charge referred to the form of the verdict.) This charge was excepted to in general terms; but it did not appear that either party asked additional instructions. Verdict and judgment for the plaintiffs. Motion for new trial overruled. Appeal by defendant Henry Trammell alone.

*Mills*, for appellant. I. The motion to quash the writ of sequestration should have been sustained. (Segur v. Sorol, 11 La. R. 444; 3 Dan. Ch. Pr. 389; Rice v. Gallatin, 3 Ak. 501; 1 Johns. Ch. Cas. 364.) An affidavit that they "feared" " to the best of their knowledge and belief" was clearly insufficient.

II. The general demurrer was improperly overruled. Neither the domicil of Philip, nor that of Nicholas Trammell is alleged in the petition.

III. Mr. Mills here argued very ably and elaborately, citing authorities, that a male minor of eighteen years of age, and married, could change his national domicil; but the length of the argument, considering the view taken of the case by the Court, precludes its insertion here.

IV. The petition does not show what time the minor's property was brought to Texas. It is presumable, therefore, the removal took place during the guardianship, since the latter continued until the minor's death. It is no answer to this, that the record shows the apparent vacation of Trammell's letters testamentary by the Probate Court of Arkansas, in default of Trammell's executorial bond, with security, which the Court ruled him to give; for its own order was a nullity, as appears from Philip's will found in the transcript, which desired that the executor should give no security.

He was attempted to be removed from his office since he did not "give bond according to law," which is the language of the order. The removal of the minor Nicholas and the negro property was by the assent and permission of the guardian. We now maintain that such removal with such assent and permission changed the domicil of the minor Nicholas and his wife from Arkansas to Texas, and with it the right of succession to the slaves in controversy. That the change of the domicil by the guardian was *bona fide* as to the minor, no one questions; the claim which Amanda J. Trammell sets up in this case fortifies the fact; indeed it was not the interest of the guardian to change the domicil; under Arkansas statute, he was one of the heirs presumptive. Then a guardian may change the domicil of his ward, so as to affect the right of succession to personal property if done in good faith. (4 Kent, Com. 227.) The question was discussed in Pottinger v. Wightman, 3 Merivale's Rep. 67, and the same conclusion come to. (Holyoke v. Harkins, 5 Pick. 20.) The French and Lou. Civil Codes declare that the minor has his domicil at that of his father, mother or tutor. (Code of France, No. 108 C. C. Louis. Art. 48.) But C. J. Gibson, in 2 Watts & Serg. 568, confined the power to change the domicil of the minor to the parent *qua* parent, and not as guardian; the distinction is too refined to yield much instruction, much less to be the basis of adjudication. The domicil of a minor whose parents are dead may be changed by the authority or with the assent of his guardian express or implied or those who have the legal control of him. (5 Pick. 20; Leeds v. Freepart, 1 Fairfield, 356.)

V. The very Section of the Arkansas statutes (admitting the *domicillium originis* of the minor) showed that the plaintiffs were not entitled to the verdict and judgment rendered. (See Descents and Distribution, Dig. of the Statutes of Arks. Chap. 56, Sec. 1.)

The dower of the widow in Arkansas includes half the slaves. (Id. Ch. 59, Sec. 21.)

*B. Shropshire* and *B. F. Carter*, for appellees. I. The obvious meaning of the affidavit was, that the facts sworn to from their own knowledge, were true, and that those sworn to from information otherwise obtained, they believed to be true. They could not have any belief as to their fears, and hence must be regarded as swearing to them positively. The failure to quash the sequestration cannot affect the judgment on the merits. (8 Tex. R. 165.)

II. The petition alleged that Philip Trammell died in Arkansas, leaving a large estate and an only child; that he left a will which was probated in the State of Arkansas, Lafayette county; that Henry Trammell received letters testamentary upon his estate from the Probate Court of said county, and was afterwards removed from the executorship, and removed the property from that State to this. These were allegations sufficient to raise the presumption that he resided in that State, and were amply sufficient to authorize the introduction of testimony to prove that he there resided, which was done to the satisfaction of the Court. The demurrer therefore was properly overruled.

III. The only instances in which a guardian, even a mother married a second time, can change the domicil of a minor, are where it can be clearly shown to be for the best interests of the minor, and entirely free from the suspicion of fraud. But the authorities recognizing these exceptions to the general principle, cannot be invoked to the aid of Henry Trammell, whose whole connection with this matter has been involved in fraud. It is clear that his removal to Texas was a fraud, for he refused to obey the mandates of the Court, and squandered property that did not belong to him. Nor can it be argued that he was the testamentary guardian of the boy. He should blush to call to his aid the will of his deceased brother, which authorized him without bond, to take charge of a large estate for an only child, and keep that child at college till he arrived at the age of 21 years. Instead of executing the will faithfully, he attempted to rob that child of his estate. That will is also an argument against the alleged emancipation of the minor. It was the will of his father, not that he should be emancipated, but that he should be kept at school till he was 21 years old.

Were this a controversy between the plaintiffs as heirs and

Amanda J. Trammell as widow, the appeal to the Court to relax the general rule that a minor cannot change his domicil, might be made with some degree of reason. But such is not the case, and the appellant has no right to ask such relaxation.

(We are obliged to omit the able argument of the counsel for the appellee, on the law of domicil in reference to this case.— Reps.)

Wheeler, J. The plaintiffs having recovered in the action, the ruling of the Court upon the motion to quash the writ of sequestration has become immaterial, as respects the merits of this appeal, and does not therefore require revision. (Cheatham v. Riddle, 8 Tex. R. 162.)

It is a sufficient answer to the objection now urged to the legal sufficiency of the petition, in that it does not distinctly aver that the domicil of Philip Trammell was in the State of Arkansas at the time of his death, that the objection was not taken in the Court below, where, had it been taken, it might have been immediately obviated by amendment. It is well settled that a demurrer, in our practice, will not be deemed to reach defective averments in pleading, which might have been cured by amendment. If a party would take advantage of such a defect in the pleadings of his adversary, he should point it out by exception, so that the adverse party, if he thinks proper, may amend. It sufficiently appears, for the purpose of determining the sufficiency of the petition on general demurrer, that the deceased had his residence in that State at the time of his death. And it is placed beyond question by the defendant's answer and the evidence in the case.

It is well settled that the succession and distribution of personal or movable property, wherever situated, is governed by the law of the country of the owner's or intestate's domicil at the time of his death. The domicil of the nativity of Nicholas Trammell having been in the State of Arkansas, the plaintiffs are entitled to recover, unless his domicil had been changed to this State at the time of his decease.

The general rule is undoubted, that the domicil of nativity continues until a new domicil is acquired; and that minors are generally deemed incapable of changing their domicil during their minority. After the death of the father his domicil remains that of his infant children. It is true, that, for some purposes, a

Trammell v. Trammell.

minor may become emancipated by the consent of his parent or guardian, expressly or tacitly given. The marriage of a female minor removes her civil disabilities by the laws of Arkansas and of this State. But it is not so provided in the case of male minors. It would be difficult, I apprehend, to maintain, either upon principle or authority, that it does have the effect to remove their civil disabilities; or that the minor in this case became thereby a person capable *sui juris* to change at pleasure his national domicil. How far the parent or guardian has the power to change the domicil of the minor, so as to change the rule of succession to his property, was examined in the late case of Wheeler v. Hollis, (19 Tex. R. 522.) An examination of the subject, if it were necessary here, it is believed would lead to the conclusion, that the defendant, if, as insisted, he is to be viewed as sustaining the relation of testamentary guardian to the minor, could not by his acts, as exhibited by the record in this case, effect a change of his domicil. But we deem it unnecessary to enter upon the inquiry as to the effect of the marriage in this respect, or to determine when, or under what circumstances, if at all, the minor is to be deemed thereby emancipated and capable of acting *sui juris* so as to effect a change of his domicil; for, upon the evidence afforded by the record, we cannot regard the minor as having changed his domicil voluntarily and uninfluenced by the conduct of the defendant; and the question is not whether, under any circumstances, he could make such change of domicil, but whether the defendant, having been put in possession by his father's will of his entire estate, and having thus acquired, as it is but reasonable to suppose, a controlling influence over him, can take advantage, for his own benefit, of a change of the domicil of the minor, brought about by his own wrongful and fraudulent conduct. It abundantly appears by the record that, if he did not directly cause the removal of the minor, he did so indirectly by the removal of his property into another jurisdiction; at least, his conduct, in open violation of the trust and confidence reposed in him in relation to the preservation and management of the estate of the minor, must be deemed such as to render him solely responsible for the change of residence of the latter from the State of his nativity to this State. He must be deemed responsible for the consequences of such removal, to those whose rights might be affected by it; and surely he cannot be permitted to take advantage of it to defeat their rights. It cannot be denied that he has acted in open violation of the un-

limited confidence reposed in him and of the rights of the minor, in his conduct respecting the property while in Arkansas, and particularly in bringing it away to this country. The will of Philip Trammell required that " the farm and negroes should be kept together," and the proceeds, after paying for the education, and defraying the necessary expenses of the minor, should be invested in other property for him until he should arrive at twenty-one; and it was expressly directed by the testator, that he should be kept until his majority " at one of the best colleges in the United States." None of the directions of the will were observed by the executor. But the defendant, having been displaced, it seems, from his office of executor, by the Court, for squandering the property, removed it in defiance of the authority of the Court and in utter disregard of the best interests of the minor, into this State. The minor came also; but it does not appear that he came voluntarily or of his own accord, or that it was his intention or desire to change his domicil, if that would affect the question. The reasonable inference, so far as concerns the defendant, is, that having possession of the entire estate of the minor, he had his person also completely within his influence; and that, whatever change of domicil there was, was effected by him. However it might be deemed, as between the widow and others claiming the estate, we think it clear that the defendant cannot be heard to controvert the right of the plaintiffs, by reason of a change of domicil of the minor, effected by means of his own wrongful and fraudulent conduct. He cannot be permitted thus to take advantage of his own wrong.

The widow of the minor, if properly a party to the suit in the Court below, has not appealed, and the decision of the case cannot affect her rights. Whatever they may be, we are of opinion that, upon the state of case presented by the record, the defendant is not in a condition to set up the alleged change of domicil of the minor to defeat the plaintiff's right. We are therefore of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.