[No. 11811. Department One. November 5, 1914.]

*In the Matter of the Delinquency of* LYNDELLE LUNDY, *a Minor.*[1]

INFANTS — OFFENSES — JUVENILE DELINQUENTS — STATUTES—CONSTRUCTION. The juvenile court law, 3 Rem. & Bal. Code, § 1987-1, is not punitive in its nature or purpose, but protective, and while strictly construed as to restraint of liberty without due process, is, in other respects, to be liberally construed to effectuate its beneficent purpose.

SAME—JUVENILE DELINQUENTS—STATUTES—APPLICATION — EFFECT OF MARRIAGE. The juvenile court law, 3 Rem. & Bal. Code, § 1987-1, defining delinquent and dependent children under the age of eighteen years, makes the age, not minority, the controlling element, and applies to a girl under eighteen years of age married to a man of full age, notwithstanding Rem. & Bal. Code, § 8744, declaring "all females married to a person of full age shall be deemed and taken to be of full age."

SAME — JUVENILE DELINQUENTS — STATUTES — CONSTRUCTION — "PLACE" WHERE LIQUOR IS SOLD. The juvenile court law (subdiv. 10 of 3 Rem. & Bal. Code, § 1987-1) making it unlawful for children under eighteen years of age to habitually visit "any billiard room or pool room or any saloon, or place where spirituous . . . liquors are sold" applies to restaurants where such liquors are sold, and it is immaterial that the delinquent child under the age of eighteen habitually visited such restaurant as a singer for hire; as singing by juveniles in such places is no necessary part of the business and is without any exculpatory element.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered October 25, 1913, upon

[1]Reported in 143 Pac. 885.

stipulated facts, determining the defendant to be a juvenile delinquent person. Affirmed.

*E. O. Connor*, for appellants.
*Lawrence H. Brown*, for respondent.

Ellis, J.—On October 9, 1913, a complaint was filed in the superior court of Spokane county, charging Lyndelle Lundy, a female child, under the age of eighteen years, with being a juvenile delinquent person. She answered, admitting that she is under the age of eighteen years, but alleged that she was married on March 1, 1913, to a man thirty-two years old; that her mother gave written consent to the issuance of the marriage license, and to the marriage, and that, on July 14, 1913, a decree annulling the marriage was entered. A demurrer to this answer was sustained.

The cause was tried to the court upon a statement of agreed facts stipulating that the girl is under the age of eighteen years, to wit, of the age of seventeen years; that she has been married to a man of full age; that the marriage has been annulled by a valid decree; that Lyndelle Lundy has been engaged in singing for wages in two restaurants, to wit, the St. Germain Cafe and the Silver Grill, in the evenings; that in each of these restaurants wines, liquors, and beer were sold and served and there consumed by the patrons and diners, and that the girl was supporting herself and assisting in the support of her mother by the wages earned in singing in such restaurants. The court held that the girl, being only of the age of seventeen years, is "a minor child under the age of eighteen years," and subject to the jurisdiction of the juvenile laws and authorities until she shall become of the age of eighteen years. The delinquent and her mother prosecute this appeal.

As we view the matter, but two questions are presented for our consideration: (1) Is a girl under the age of eighteen years within the purview of the juvenile law, and subject to the jurisdiction of the juvenile court whether she be married

or single? (2) Does that law apply to a vocalist for hire who sings in a public restaurant where liquors are sold and consumed? Both of these questions must be determined by the terms of the act construed with reference to its manifest purpose and intent.

The scope of the act is determined by its first section which, so far as here material, reads as follows:

"Section 1. This act shall be known as the 'Juvenile Court Law' and shall apply to all minor children under the age of eighteen years who are delinquent or dependent; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children.

"For the purpose of this act the words 'dependent child' shall mean any child under the age of eighteen years  .  .  .

"(10) Who habitually visits any billiard-room or pool-room; or any saloon, or place where spirituous, vinous, or malt liquors are sold, bartered, or given away; or  .  .  .

"(16) Who from any cause is in danger of growing up to lead an idle, dissolute or immoral life; or  .  .  .

"(18) Any child under the age of twelve years found peddling or selling any article, or singing or playing on any musical instrument for gain upon the public street, or giving any public entertainment, or who accompanies, or is used in aid of, any person so doing: *Provided*, That this act shall not prohibit the giving of entertainments by regularly organized schools or societies where twelve or more musical instruments are used.

"The words 'delinquent child' shall include any child under the age of eighteen years who violates any law of this state, or any ordinance of any town, city, county or city and county of this state defining crime; or who habitually uses vile, obscene, vulgar, profane or indecent language, or is guilty of immoral conduct; or who is found in or about railroad yards or tracks; or who jumps on or off trains or cars; or who enters a car or engine, without lawful authority.

"For the purpose of this act only, all delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the court as hereinafter provided." Laws 1913, p. 520, § 1; 3 Rem. & Bal. Code, § 1987-1.

The act, in its application to the delinquent, is not puni-
tive in its nature or purpose.   The policy underlying this
law is protection, not punishment.   Its purpose is not to
restrain criminals to the end that society may be protected
and the criminal perchance reformed; it is to prevent the
making of criminals.   Its operation is intended to check the
criminal tendency in its inception, and protect the unformed
character in the facile period from improper environment and
influences.   In short, its motive is to give to the weak and
immature a fair fighting chance for the development of the
elements of honesty, sobriety and virtue essential to good
citizenship.   While no person, whether minor or adult, should
ever be restrained of liberty without due process, and in that
respect the statute must be construed with all the strictness
of a criminal law (*Weber v. Doust*, 81 Wash. 668, 143
Pac. 148) in other respects it should be liberally construed
to the end that its manifest beneficent purpose may be ef-
fectuated to the fullest extent compatible with its terms.   The
act, taken as a whole, will admit of no other view.

We are asked to hold that because another statute, Rem. &
Bal. Code, § 8744 (P. C. 69 § 3) declares "All females mar-
ried to a person of full age shall be deemed and taken to be
of full age," the admitted prior marriage of the child here
involved caused her to become and remain of full age for all
purposes, and that the annulment of the marriage did not
restore her former status as a minor child, within the pur-
view of the juvenile court law.   The statute referred to, how-
ever, in removing the disabilities of minority, does not use
the words "for all purposes" which we are asked to read into
it.   That statute merely removes the common law disabilities
of minority.   It was never intended to prohibit a classifica-
tion of minors for the purposes of legislation, nor to limit
the meaning of the word "minor" in acts relating to minors
as a class without that exception.   As we view the juvenile
court law, we find it unnecessary to enter into a lengthy dis-
cussion of this point, or to determine whether the annulment

of the marriage restored the delinquent's status as a minor for all purposes, or for any purpose. Viewed as a remedial rather than a punitive statute, we would not be justified in holding that the definition of a delinquent or dependent person, found in the language of the first section of the act which we have quoted, is dominated and controlled by the single word "minor," taken in its technical legal significance as found in other connections, and as applied in relation to other things. The purposes of the juvenile court law have a clear and distinct connection with *age* as related to discretion and character. In passing it, the legislature indulged the usual presumptions arising from human experience that there is ordinarily a lack of mature discretion, discriminating judgment, and stability of character in children under the age of eighteen years; hence, it does not apply to all minor children, but only to "all minor children under the age of eighteen years." Moreover, the very next sentence of the act omits the word "minor" and says "For the purposes of this act the words 'dependent child' shall mean any child under the age of eighteen years," thus defining its own terms. The same omission occurs again in subdivision 18 of this section, in defining the words "delinquent child" as including "any child under the age of eighteen years," etc. Clearly, the age is the controlling element, not the minority. That the purposes of the act are broader and more comprehensive than statutes applicable to minors merely as minors is made clear in the closing clause of this first definitive section, which declares "for the purpose of this act only," all delinquent and dependent children (presumably as just before defined), shall be the wards of the state and "subject to the custody, care, guardianship and control of the court." When the beneficent purposes of the act are recognized as the controlling motive of the legislature in passing it, we can hardly conceive that the members of that body intended to exempt from the purview of the act those females under the age of eighteen years who had already evinced, by marriage at a tender age, that na-

tive recklessness or indiscretion, too often the concomitant of mere physical precocity, which it is one of the objects of the act to guard against and control. Suppose the act applied only to "minor children" or "any child," as later stated, "under the age of eighteen years," "found living or being in any house of prostitution or assignation," eliminating all save the ninth subdivision; would any one suppose that the state's guardianship or the court's tutelage would be held abrogated by any prior marriage of the habitue?

We hold that a girl under eighteen years of age is within the purview of the juvenile law and within the jurisdiction of the juvenile court, notwithstanding her prior marriage to a person of full age. There are authorities which take the opposite view, but we adopt this construction of the act advisedly, and believe that in so doing we are carrying out the legislative will and preserving the sound public policy portrayed by the whole tenor of the act.

Does the juvenile court law apply to a singer for hire in a public restaurant where liquors are sold and consumed? Every consideration which calls for a broad interpretation of the act in its application to persons calls equally for the same breadth of interpretation in its application to places. This hardly needs to be amplified. It seems too plain for argument. But the words of subdivision 10 of the first section of the act, even standing alone, without a consideration of the broad purposes of the act as a whole, will hardly admit of a construction excluding such restaurants. That subdivision applies to one "who habitually visits any billiard-room or pool-room; or any saloon or place" where liquors are sold. Broader language could hardly be framed. If it had been the intention of the legislature to exclude other places than saloons, the words "or place" would necessarily have been omitted. If it had been intended to exclude any place where meals were sold as well as liquor, it would have been easy so to state. In short, if there had been any intention to except restaurants, the exception, in appropriate

language, was so obviously necessary to exclude such places from the language already used, that the legislature would doubtless have made the express exception. No exception having been made, the language must be given its plain, ordinary meaning, which is the inclusion of every place where liquors are sold. It may be argued that there are many—perhaps a majority—of restaurants and hostelries where liquors are dispensed to patrons with their meals which are conducted in an orderly and circumspect manner at all times, and patronized by thoroughly respectable and moral people. This is true, but it is also true that there may be, and doubtless are, many restaurants where liquors are sold which are not orderly, where there is drunkenness, and where the surroundings would have a direct tendency to corrupt the young and immature. It is the purpose of the law, as shown by the eighteen subdivisions of section one of the act, to specify, as nearly as any general law can, the exact things which fall within its purview. As between places, if there is to be any specification of places, the line must, of necessity, be drawn somewhere. The legislature has drawn it between places where liquors are sold and those where they are not. For a court to draw the line elsewhere would be to legislate, not to construe. We are constrained to hold that, both by the terms of the act, and by a consideration of its purposes, one who habitually visits any place, whether a saloon, restaurant or cafe, where liquors are sold, is within the purview of the act.

But it is argued that subdivision 10, above quoted, does not include a singer for hire; that one who visits such a place, though every evening, for the purpose of singing for hire, does not "habitually visit" it within the meaning of the act. The words of that subdivision, however, do not exclude, either expressly or by inference, persons whose habitual visits are inspired by a desire for gain any more than those inspired by a desire for pleasure. Suppose this singer had nightly visited a saloon to sing for pay. Would any one contend that she would not be an habitual visitant within the meaning

of the act? The law recognizes neither poverty nor cupidity
as an excuse in such a case, any more than in the case of one
who, for pay, "frequents the company of reputed criminals
. . . or prostitutes," included in the act by subdivision 8,
or one who, for pay, lives in, or is "in any house of prostitu-
tion or assignation" included by subdivision 9. These are, of
course, extreme illustrations, and the parallel is drawn not
for the purpose of showing that every person under the age
of eighteen years who habitually visits a restaurant or hotel
dining room where intoxicants are served to patrons neces-
sarily falls within the purview of the act, but only as showing
that no such person is *necessarily* excluded, and that the inci-
dent of singing for hire has no exculpatory effect in any case.
It may be urged that, unless this would exclude the singer
from the purview of the act, then every person under eighteen
years of age who visits such a restaurant or hotel dining
room for the purpose of partaking of meals would be within
its purview. But this by no means follows. The serving of
meals is the legally recognized business of hotels and res-
taurants. The employment of a singer, much less a juvenile
singer, is no necessary part of such business. The juvenile
court law by no construction could ever have been intended
to prevent any member of the public from visiting such places
habitually to patronize them in the exercise of the lawful
function of providing meals. In such a case, whether the
habitual visits of a person under eighteen years of age are,
in good faith, for such purposes only or whether such pur-
pose is merely the ostensible purpose, the real purpose being
for lounging, amusement or idling, is a question of fact to
be determined by the court upon evidence in each case. The
distinction is this: Visiting in good faith for the purpose
of procuring meals is always an exculpatory element, since it
is often a practical necessity and has no inevitable tendency
to corrupt even the young. Visiting by the young for hire
can never be, in itself, an exculpatory element, since it has
in it no element of necessity and may have a corrupting

tendency. This distinction is found in the very purpose of the act, and is sustained by the broad discretion to determine who is a delinquent vested in the court by subdivision 16 of section 1 (3 Rem. & Bal. Code, § 1987-1) of the act, which includes any such person "who from any cause is in danger of growing up to lead an idle, dissolute or immoral life." The effect of the distinction is this: Where the place falls within the terms of the act, yet, where, from the nature of the place and business, there can be an habitual visiting for a purpose not running counter to the beneficent intent of the act, the burden is upon the visitor to show that his visits are for such purpose, but he does not show it as a matter of law by showing that the habitual visits are to sing for hire. That excuse is in law no excuse and a person under the age of eighteen years, who gives no other, comes, as a matter of law, within the purview of the juvenile law and is subject to the jurisdiction of the juvenile court. The other view would invite evasion, court fraud, and place a burden not imposed by the statute upon those responsible for its enforcement. Our construction of the law imposes no hardship. It permits the operation of hotels and restaurants with every right essential to such operation as now permitted by other laws and without the loss of any patronage offered in good faith. Even assuming that singing is an essential adjunct, no stretch of imagination can require that the singer be under eighteen years of age.

There is no merit in the suggestion that because subdivision eighteen prohibits any child under twelve years of age from singing for gain upon the public street or giving any public entertainment, therefore, an older child may sing for gain in a place where liquors are sold. The consequence of the conclusion is self-evident.

The judgment is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.