STATE EX REL. FOOT, ATTORNEY GENERAL, RELATOR, v. DIS-
TRICT COURT ET AL., RESPONDENTS.

(No. 6,048.)

(Submitted October 18, 1926. Decided October 27, 1926.)

[250 Pac. 973.]

*Infants—Juvenile Delinquency—Construction of Statute.*

Juvenile Delinquents—Married Female Under Age of Eighteen may be
Committed to Vocational School Until Twenty-one.
1. In the absence of a statute to that effect, the marriage
of a female minor, while releasing her from parental authority,
does not change her status to that of an adult, and therefore
under the juvenile delinquent law, a married female under the age
of eighteen may properly be committed to the State Vocational
School for Girls until she attain the age of twenty-one years.

Statutory Construction—Rule.
2. In construing a statute the court must give effect, if pos-
sible, to every word, clause, phrase and sentence employed in it,
and none thereof must be held meaningless if effect can be given
to it.

Juvenile Delinquents—Statute—Controlling Element is Age, not Minority.
3. The controlling element in juvenile laws is age, not minority;
hence the contention that a female cannot be held under a
commitment in the State Vocational School for Girls after she
reaches the age of majority fixed by section 5673 of the Revised
Codes of 1921, at eighteen years, cannot be sustained.

---

[1]    Infants, 31 C. J., sec. 39, p. 1009, n. 97, 98; sec. 227, p. 1103,
n. 73.    Parent and Child, 29 Cyc., p. 1675, n. 86.
[2]    Statutes, 36 Cyc., p. 1128, n. 58.
[3]    Age, 2 C. J., p. 402, n. 17.    Infants, 31 C. J., sec. 3, p. 986,
n. 25; p. 987, n. 28; sec. 230, p. 1105, n. 98; sec. 243, p. 1111, n. 69;
sec. 244, p. 1111, n. 73, 74.

Original application by the State, on the relation of L. A.
Foot, Attorney General, for writ of supervisory control to
annul an order of the District Court of the First Judicial Dis-
trict in and for the County of Lewis and Clark, and Wm. H.
Poorman, a judge thereof, releasing Florence Fleming Crim-
mon from the State Vocational School for Girls on writ of
*habeas corpus.*    Writ issued.

---

1.    See 14 R. C. L. 219.
2.    See 25 R. C. L. 1004.
3.    Marriage as affecting jurisdiction of juvenile court over delin-
quent or dependent, see note in 19 A. L. R. 616.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* for Relator, submitted a brief; *Mr. Choate* argued the cause orally.

*Mr. Ed. Phelan,* for Respondents, submitted a brief; *Mr. David R. Smith,* of Counsel, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original application by the state of Montana on the relation of L. A. Foot, Attorney General, for writ of supervisory control to annul an order of the district court of Lewis and Clark county releasing Florence Fleming Crimmon from the Vocational School for Girls, on .writ of *habeas corpus.* Writ issued.

Florence Fleming Crimmon was born April 16, 1908. Some time prior to January, 1925, she married, but in that month left her husband. On October 27, 1925, she was committed to the Vocational School for Girls until she should attain the age of twenty-one years, unless sooner legally discharged or paroled. In April, 1926, she attained the age of eighteen years, and in September, following, filed her petition for a writ of *habeas corpus,* which writ was granted and her discharge ordered; this proceeding resulted.

But two questions are presented: (1) Does the juvenile delinquency law apply to one who, though under eighteen years of age, is married, and, if so, (2) can a girl, who has been legally committed to the institution in question, be held therein after she attains the age of eighteen years?

The statutes governing such commitment are found in Chapter 51 of Part II and Chapters 5 and 6 of Part III of our Penal Code of 1921. Therein, section 12275 declares that "for the purposes of this Act" the words "delinquent child" and "juvenile delinquent person" shall include any child under the age of eighteen years, who comes within the provisions of the Act; while section 12276 again declares that "any child under eighteen years of age," found in the situa-

tion therein described "shall be deemed a delinquent child or a juvenile delinquent person." Section 12536 provides for the commitment of such female delinquents to the State Vocational School for Girls, and section 12539 declares that "each girl committed * * * shall remain there until she arrives at the age of twenty-one years, unless paroled or legally discharged: Provided, that it shall be lawful for the executive board to discharge therefrom any girl, an inmate thereof, who has arrived at the age of eighteen years," under certain conditions.

1. Counsel for the delinquent contend that her marriage [1] placed her in the same situation as though she had reached her majority, and that therefore the court was without jurisdiction to commit her, citing section 5841 of the Revised Codes of 1921, which provides that the authority of a parent over a child ceases (1) upon the appointment of a guardian for the child, (2) upon the child's marriage, and (3) upon the child attaining its majority.

Although marriage may, and under our statute does, emancipate a child from parental authority, it has otherwise little effect (*Bool* v. *Mix*, 17 Wend. (N. Y.) 119, 31 Am. Dec. 285), the disabilities of infancy remain in the absence of express statutory provision (31 C. J. 1009); in other words, while marriage releases a child from parental authority, it does not change the status of the child from that of a minor to that of an adult, within the meaning of statutes defining those terms, unless some statute expressly so provides (see *Trammell* v. *Trammell,* 20 Tex. 406; *Taunton* v. *Plymouth,* 15 Mass. 203; *Austin* v. *Austin,* 167 Mich. 164, Ann. Cas. 1913A, 545, 132 N. W. 495. We have no such statutory provision; in fact, the statute quoted is the only one on the subject, and it refers to majority and marriage as different situations.

While the Washington statute on majority provides that the marriage of a female under eighteen years of age to one of full age has the effect of making such female of full and lawful age, the supreme court of that state, nevertheless, held that

"a girl under eighteen years of age is within the purview of the juvenile law and within the jurisdiction of the juvenile court, notwithstanding her prior marriage to a person of full age," saying: "The statute referred to, * * * in removing the disabilities of minority does not use the words 'for all purposes' which we are asked to read into it. That statute merely removes the common-law disabilities of minority. It was never intended to prohibit a classification of minors for the purpose of legislation, nor to limit the meaning of the word 'minor' in Acts relating to minors as a class without that exception." (*In re Lundy,* 82 Wash. 148, Ann. Cas. 1916E, 1007, 143 Pac. 885.) In a note to this case, found in Annotated Cases 1916E, 1007, it is said that: "It is generally held that the jurisdiction of a juvenile court of a charge of delinquency against a minor is not affected by the fact that the minor is a married person" (citing *Stoker* v. *Gowans,* 45 Utah, 556, Ann. Cas. 1916E, 1025, 147 Pac. 911; *Ex parte Willis,* 30 Cal. App. 188, 157 Pac. 819). While the reported case is directly in point here, the cases cited in the note present a different situation, as, in those cases, it is held that the operation of the juvenile law is not suspended by the marriage of the delinquent after the juvenile court had acquired jurisdiction. To this effect, see, also, *In re Hook,* 95 Vt. 497, 19 A. L. R. 610, 115 Atl. 730.

In the case before us, there is more cogent reason for holding as did the Washington court, for, as pointed out above, our statute removes no disability of the minor, on marriage, other than that of parental authority, and the very statute on which counsel rely recognizes a distinction between marriage and majority; while either will release the person from parental authority, they are otherwise disconnected; the latter releases such person because of majority, the former in spite of minority.

The wording of our juvenile delinquent statutes reveals the legislative intention to include, rather than exclude, married minors. In section 12276 above, the phrases "delinquent

child" and "juvenile delinquent person" are used in the disjunctive; clearly, this dual designation was used for a purpose. The latter includes and is broader than the former; but, if we were to adopt the construction contended for in this connection, the former designation is sufficient and we must discard the latter as having no force or effect. This we cannot do, for in construing a statute we are required to give effect, **[2]** if possible, to every word, clause, phrase, and sentence employed in it, and none thereof shall be held meaningless, if effect can be given to each thereof. (*Mid-Northern Oil Co.* v. *Walker,* 65 Mont. 414, 211 Pac. 353.) The only status of a juvenile "person" which we can call to mind in which such person may not, with propriety, be called a "child" is that wherein such person, while still under the age of majority, is married; and it is therefore apparent that the legislature used the two phrases in the alternative advisedly, for the purpose of including within the purview of the section all delinquent persons under the age of eighteen years, and with good and sufficient reason. The purpose of the statute is benevolent; it is protective and not penal; it seeks to protect and reform erring ones who have not reached an age of discretion and mature judgment; but, while this is the primary object of the Act, the statute performs a secondary and wholesome purpose, in that it protects youthful society from the pernicious influence of the wayward ones, and it is conceivable that a delinquent minor who, married, may evince by the very act her need of protection and reformation, at least after she had separated from her husband, and that such a one will be a greater menace to youthful society than would an unmarried girl of the same age, though both come within the definition of delinquents.

Under these circumstances, we conclude that Florence Fleming Crimmon was, at the time of her commitment, "a juvenile delinquent person," within the meaning of the statute, and therefore the order of commitment was valid.

2. It is next contended that the juvenile delinquent law "has **[3]** its sanction in the fundamental fact that such enactments

relate to and deal with minors as distinguished from adult persons''; that ''the status of the person to be dealt with is fixed and circumscribed by the minority of such persons''; and, from these statements, it is argued that no person can be held under a commitment and within the vocational school after such person reaches the age of majority.

Section 5673 of the Revised Codes of 1921, declares that minors are males under twenty-one years of age, and females under eighteen years of age, while other persons are adults. If this statute, as claimed by counsel, fixes and circumscribes the age limit in the Juvenile Act, then that Act should be held to include within its purview males under the age of twenty-one years.   But, as was said in the *Lundy Case* above, the controlling element in juvenile laws is age, not minority.   ''Viewed as a remedial rather than a punitive statute, we would not be justified in holding that the definition of a delinquent or dependent person, found in the language of .the first section of the [juvenile] Act   *   *   *   is dominated and controlled by the single word 'minor,' taken in its technical legal significance as found in other connections, and as applied in relation to other things.   *   *   *   In passing it, the Legislature indulged the usual presumptions, arising from human experience, that there is ordinarily a lack of mature discretion, discriminating judgment, and stability of character in children under the age of eighteen years; hence it does not apply to all minor children, but only to 'all minor children under the age of eighteen years.' ''   (*In re Lundy,* above.)

Such statutes are enacted under the police power of the state (*In re Hook,* above), and, so long as the statute appears to be reasonably necessary for the accomplishment of its known objects, it need have no connection with or reference to the minority statutes.   It is so held in *Moore* v. *Williams,* 19 Cal. App. 600, 127 Pac. 509, wherein such a statute as ours was attacked as unconstitutional, the court saying: ''No sound reason can be suggested why the state may not do this to save a female under the age of twenty-one, if it may do so to rescue

and save a male of that age. There is no sound reason why a female of equal age with the male may not be declared to be a 'delinquent' for violating a state law defining crime.''

In *McPherson* v. *Day,* 162 Iowa, 251, 144 N. W. 4, the facts are identical with those before us; a delinquent was ordered released in *habeas corpus* proceedings because she had reached the age of majority and· was a married woman. The court said: ''The order of commitment followed the provisions of this statute. It is manifest `*` `*` `*` that the plaintiff was not illegally restrained and that her period of detention did not expire until she was twenty-one years of age.''

Whatever reasoning impelled the legislature to fix the age of majority of females at eighteen years, while that of males was fixed at twenty-one, this was but the exercise of legislative discretion for the purpose of the Act, and did not prevent a different classification for other purposes, and could not bind the legislature, in the valid exercise of the police power of the state with regard to delinquents; that body was at liberty to entirely disregard its former arbitrary declaration, for another purpose, that a female reaches majority at the age of eighteen years, and declare that a juvenile delinquent person, for the purpose of protection and reformation of the individual and for the purpose of protecting society, should be committed until such person reached the age of twenty-one years, regardless of the sex of such person; it did so. The statute is valid, and it follows that Florence Fleming Crimmon was not illegally restrained.

If the purposes of the statute have been accomplished; if the inmate can· show that ''while there'' she has deported and conducted herself ''in such manner as to make it reasonably probable that she has reformed and is a proper person to be discharged'' (sec. 12539, above), she may successfully seek a discharge at the hands of the executive board of the institution, but the courts are without authority to take such action.

The order of the district court of Lewis and Clark county is annulled, and said court is hereby directed to dismiss the

proceeding and to remand the said Florence Fleming Crimmon to the custody of the State Vocational School for Girls.

*Order annulled.*

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE STARK concur.

JUSTICES HOLLOWAY and GALEN not sitting.