1. INFANTS—SUFFICIENCY OF COMPLAINT IN DELINQUENCY CHARGE—STATUTES.

Statement in complaint under Act No. 127, Pub. Acts 1927, § 5, against female child that she "is immoral in conduct" is a mere conclusion, not a statement of facts, and is insufficient to confer jurisdiction upon the court, but a charge that she is "an habitual truant from home" is sufficient.

2. PARDON—EFFECT OF VOID PAROLE.

A void parole has no effect upon the original judgment; and if parole be void, attempted revocation of it is without substance.

3. INFANTS—CHILD WIFE INCLUDED AS CHILD IN DELINQUENCY STATUTE.

Under Act No. 127, Pub. Acts 1927, relating to delinquent children and defining the word "child" as meaning any person, male or female, under the age of 21 years, a child wife is included.

Marriage as affecting jurisdiction of juvenile court over delinquent or dependent, see annotation in 19 A. L. R. 616; 49 A. L. R. 402.

4. SAME—COURT'S JURISDICTION OVER DELINQUENT CHILD NOT LOST
BY HER MARRIAGE.
  Court's jurisdiction over 16-year old female adjudged delinquent
    child under Act No. 127, Pub. Acts 1927, was not lost by her
    subsequent marriage while on probation under supervision of
    probation officer; Act No. 160, Pub. Acts 1919, providing for
    release of minor from parental control by legal marriage, hav-
    ing no application to court's jurisdiction over delinquent child.

*Habeas corpus* proceedings by Marvin L. Drye
to obtain the release of his wife, Lena Russell Drye,
from the Wayne County Juvenile Detention Home.
Submitted January 21, 1930.   (Calendar No. 34,781.)
Writ denied March 7, 1930.

*Don M. Harlan,* for petitioner.

*George E. Brand,* for respondent.

CLARK, J.   This is *habeas corpus* with accompany-
ing certiorari to inquire into the detention of Lena
Russell Drye at Wayne county juvenile detention
home.   The return to the writ of *habeas corpus* is by
Dr. Harry S. King, superintendent of the home, and
to the writ of certiorari by Hon. George M. Read,
judge of probate of the county, juvenile division.
  On June 4, 1929, and again on July 15, 1929, a
complaint and petition, pursuant to section 5, Act
No. 127, Pub. Acts 1927 (amendatory of 1 Comp.
Laws 1915, § 2015), was filed, in which it is stated
that Lena Russell, a child 16 years of age, on July 15,
1929, is a delinquent child and that she "is immoral
in conduct and an habitual truant from home," "is
a truant from home and school."   After investiga-
tion, report, and hearing, she was adjudged to be a
delinquent child under the statute, and she was de-
creed to be a ward of the court and remanded to the
home for further investigation.   Later, after due in-

vestigation, the child was "placed on probation and under the supervision of \* \* \* a probation officer of this court." This child's delinquency, in part at least, was due to her consorting with one Marvin L. Drye, who later was arrested for an offense in this regard. He was married, and later was divorced. He and the delinquent child went into the State of Ohio, were married, and returned to Detroit. The parole of the child was revoked, and she was remanded again to the home for further investigation. Her husband, Marvin L. Drye, thereupon brought these proceedings, and, bail being given, the child wife was released to him.

The complaint and petition against the child is assailed as insufficient to give jurisdiction, in that it avers conclusions and sets forth no facts. Said section 5 provides in part:

"Upon the filing with the court of a sworn petition setting forth upon knowledge or upon information and belief, the facts showing that any child resident in said county is a delinquent, dependent or neglected child, or a wayward minor, within the meaning of section one of this act, the court shall," etc.

It is clear that the statute requires facts substantiating the accusation or complaint to be set forth. The statement in the complaint here, that she "is immoral in conduct" is a mere conclusion, not a statement of facts, and is insufficient. *In re O'Neil,* 239 Mich. 450. Habitual truancy from school and running away from home are grounds for complaint under the statute. Section 1, Act No. 127, Pub. Acts 1927 (amendatory of 1 Comp. Laws 1915, § 2011). Habitual truancy from home is within the contemplation of the act. One who runs away habitually is no less an offender than one who runs away but

occasionally. It was sufficient to charge without more that she was an habitual truant from home. To the rule that one may not be charged generally with the commission of an offense:

"There is, however, said to be an exception to this rule in the case of an offense consisting not of a single act, but of a series of acts as essential elements in the crime, in which case the charge may properly be general in its character, and need not specify the details of the various distinct acts which will establish guilt." 31 C. J. p. 694.

In *People* v. *Radley,* 127 Mich. 627, the defendant was charged to be a "drunkard." The court said:

"The single word is, therefore, sufficient to apprise respondent of the offense with which he is charged."

Other cases of like nature are cited in note 31 C. J. p. 694.

The complaint, not drawn with due attention to the statute, is nevertheless held to be sufficient.

The next point is that the parole is void because it contains neither term nor conditions required by said section 5 of the act, and revocation of the parole is also criticized. We need not determine the question, as it makes no difference. Even if the parole be void the original adjudication of delinquency, the decree making the child a ward of the court and committing her to the home still stand. A void parole has no effect upon the original judgment. *People* v. *Cook,* 147 Mich. 127. And if the parole be void, the attempted revocation of it is without substance.

It was held in *Re Adams,* 169 Mich. 606:

"We hold, therefore, that the action of the board (granting parole) conferred no rights upon the petitioner, and its rescission of its action worked no injury to him."

And said section 5 also provides:

"* * * where any child has been decreed to be a ward of the court, the authority of the court over its person shall continue until the court shall otherwise decree."

The last and principal contention is that by the marriage the court lost jurisdiction, that the child wife is no longer a child within the meaning of the law.

It is true that an infant wife 18 years of age may bar her right of dower as set forth in 3 Comp. Laws 1915, § 11679, that her marriage while under guardianship terminates the guardianship as to her person, 3 Comp. Laws 1915, § 13975, and that Act No. 160, Pub. Acts 1919, provides that by the legal marriage a minor is released from parental control and that he or she is "subject to the same duties, liabilities and responsibilities" as if the minor were of legal age at the time of marriage. But these statutes are not important here. *State, ex rel. Foot,* v. *District Court,* 77 Mont. 290 (250 Pac. 973, 49 A. L. R. 398), where the matter is considered. Such statutes affect the marital relation. They do not give the child the status of an adult person in respect of the State. Other disabilities of infancy remain. Instances: The child is not thereby an elector, and to prosecute or defend an action she must have representation. See *Curtis* v. *Curtis, ante,* 105. The key word to Act No. 127 is child. That word is there defined certainly, quoting from section 1: "The word 'child' as used in this act shall mean any person, male or female, under the age of twenty-one years." Within such description the child wife is included. Our statute is so read. The bench law is to the same effect. 31 C. J. p. 1103. Cases are reviewed in note 19 A. L. R. 616.

It was held in *Re Hook,* 95 Vt. 497 (115 Atl. 730, 19 A. L. R. 610), that, where the State once assumes control of a delinquent or neglected child, its authority is not ousted by marriage of the child.

In *State, ex rel. Foot,* v. *District Court, supra,* it was held that the fact that an infant is married has no effect on the juvenile court's jurisdiction over her.

In *Re Lundy,* 82 Wash. 148 (143 Pac. 885, Ann. Cas. 1916E, 1007), there was a like holding, and it was further held:

"When the beneficent purposes of the act are recognized as the controlling motive of the legislature in passing it, we can hardly conceive that the members of that body intended to exempt from the purview of the act those females under the age of eighteen years who had already evinced, by marriage at a tender age, that native recklessness or indiscretion, too often the concomitant of mere physical precocity, which it is one of the objects of the act to guard against and control. Suppose the act applied only to 'minor children' or any 'child,' as later stated, 'under the age of eighteen years,' 'found living or being in any house of prostitution or assignation,' eliminating all save the ninth subdivision; would anyone suppose that the State's guardianship or the court's tutelage would be held abrogated by any prior marriage of the habitue?

"We hold that a girl under eighteen years of age is within the purview of the juvenile law and within the jurisdiction of the juvenile court, notwithstanding her prior marriage to a person of full age. There are authorities which take the opposite view, but we adopt this construction of the act advisedly, and believe that in so doing we are carrying out the legislative will and preserving the sound public policy portrayed by the whole tenor of the act."

We quote from *Stoker* v. *Gowans,* 45 Utah, 556 (147 Pac. 911, Ann. Cas. 1916E, 1025):

"But, assuming that she did marry, as contended, yet there is nothing in the law governing juvenile delinquents which suspends its operation merely because a delinquent enters into the marriage relation."

*In re Lewis,* 3 Cal. App. 738 (86 Pac. 996), is cited, but see later case *In re Willis,* 30 Cal. App. 188 (157 Pac. 819).

Because of the marriage, the State could not use the child as a witness against Drye, and its case against him was dismissed. To hold that by the marriage the child also passed beyond the reach ·of the law is to encourage the practice of thus defying the law.

It follows that the authority of the said court was not lost by the marriage of the child, and she is now a ward of the court and stands committed as stated.

The marriage has not lessened the responsibility of the court. Any action or proceeding may affect vitally a most sacred and important domestic relation. Perhaps the marriage will work redemption, perhaps not. The place for this wife is with her husband unless her welfare requires imperatively that she be placed elsewhere. Her case is in the hands of the probate court, and having studied the record and observed the patient devotion of the court to the welfare of the child, we are content to leave it there.

On certiorari, the adjudication and decree are affirmed, and the cause is remanded to the probate court, juvenile division, and on *habeas corpus* the child is remanded to the custody of superintendent, Wayne county juvenile detention home.

Wiest, C. J., and Butzel, Potter, Sharpe, North, and Fead, JJ., concurred. McDonald, J., did not sit.