# CHARLESTON

UNDERWOOD TYPEWRITER CO. *v.* PIGGOTT.

Submitted June 13, 1906.   Decided November 20, 1906.

1. APPEAL—*Appealable Judgment.*

A judgment improperly abating an action upon a ground which precludes further proceedings, is appealable.   (p. 534.)

SAME—*Jurisdiction—Constitutional Question.*

A judgment founded upon an erroneous construction of a statute, which makes its enforcement conflict with constitutional guaran-

ties, involves the constitutionality of a law, and is, therefore, reviewable, without regard to the amount in controversy. (p. 535.)

3.  STATUTES— Construction.

Whenever an act of the legislature can be so construed and applied as to avoid conflict with a constitutional provision, and give it the force of law, such construction will be adopted. (p. 536.)

4.  CORPORATIONS—Foreign Corporations Doing Business in this State.

A foreign corporation, which sells and delivers goods, merchandise, machinery or other articles of trade and commerce in this State, upon orders taken therefor by its agents and traveling salesmen, and forwarded to it, and not otherwise, and transacts no other business in the State, does not transact or carry on business in this State, within the meaning of section 30 of chapter 54 of the Code, as amended by section 31 of chapter 35 of the Acts of 1901, and is not required to comply with the provisions of said statute, nor denied by it the power to bring and maintain suits and actions for the enforcement of such contracts. (p. 536.)

Error to Circuit Court, Wood County..

Action by the Underwood Typewriter Company against R. H. Piggott. Judgment for defendant, and plaintiff brings error.

Reversed.    Remanded.

J. CAMERON MCCLURER, for plaintiff in error.

CALDWELL & WATSON, J. T. PIGGOTT, J. D. CUTLIP and R. H. PIGGOTT, for defendant in error.

POFFENBARGER, JUDGE:

The Underwood Typewriter Company complains, on a writ of error, of a judgment of the circuit court of Wood county, abating its action, and refusing to allow it to prosecute the same, because it has not complied with the provisions of section 30 of chapter 54 of the Code, as amended by section 31 of chapter 35 of the Acts of 1901, requiring foreign corporations to which class said plaintiff in error belongs, to file with the secretary of state a copy of its articles of association and obtain from that officer a certificate, showing the fact, and record the same in the clerk's office of the county court of the county, or one

of the counties, in which its business is conducted, as a condition precedent to the right to do business in this State.

The action was brought before a justice of the peace of said county against R. H. Piggott, for the recovery of the possession of one typewriter of the value of one hundred dollars, which said company had sold to the defendant, under a contract by which the title thereto was reserved until full payment of the purchase price should be made, and resulted in a judgment for the defendant. After an unsuccessful effort to have the judgment set aside and a new trial granted, in the course of which a special plea was filed, denying the right of the plaintiff to bring or maintain any action in this State, because of its failure to comply with said statute; was filed in resistance of the motion to set aside the judgment, an appeal was taken to the circuit court. There, a motion to strike out the special plea was made and overruled, and thereupon the plaintiff filed a special replication to it, showing that it maintains no place of business in this State, and transacts no business here, other than the selling of its machines by sample through agents and representatives, denying that the statute relied upon has any application to it, and insisting that, if it does have such application, it is void, because in violation of the federal interstate commerce law. The hearing on the plea resulted in a judgment that the action abate and stand abated, until the plaintiff shall have complied with the provisions of said statute.

Two questions relating to appellate jurisdiction are presented, the first of which is whether there is a final judgment, and the second whether the constitutionality of a law is involved, since the amount in controversy does not appear to be more than one hundred dollars.

Though the judgment is not final, in the sense of disposing of the case on its merits, it is nevertheless final in that it prevents a recovery in the present status of the plaintiff and is tantamount to a dismissal of its action. This brings the case within the decision in *Carson* v. *Insurance Co.*, 41 W. Va. 136. The plaintiff had brought his action of *assumpsit* in one county on a policy of insurance, and it appeared on the face of the declaration that the loss, for which

recovery was sought, had occurred in another county, and the circuit court, being of opinion that the action should have been brought in the county in which the loss occurred, dismissed it upon demurrer without prejudice. Although this was merely an abatement of the action, this Court allowed a writ of error, reversed the judgment, and remanded the cause.

The other question is not entirely free from difficulty. If the circuit court has correctly interpreted the statute, it is violative of the federal constitution, as will be hereinafter shown; but it will also appear that, upon a proper construction, the statute does not interfere with the right of the plaintiff to sue, and is not invalid. But for the erroneous decision of the circuit court, no constitutional question could possibly arise. The appellate jurisdiction, however, does not seem to be limited to those decisions in which valid laws are held unconstitutional. It extends to cases involving the constitutionality of a law. Wherever the question of constitutionality arises in a case, and enters into the decision, whether that decision upholds or overthrows the statute, the constitutionality of a law must be involved. In most instances it appears in this way. To say that a decision which gives to a statute in effect beyond what the legislature intended it to have and enforces it in such manner and to such extent as to work an invasion of a constitutional right, is to go a step further, but since the court has power and jurisdiction to interpret laws, and though it erroneously so construes the statute as to produce the result, it nevertheless declares the law of the particular case, and works an injury as serious as if it had held a valid law unconstitutional, or an invalid law free from objection on constitutional grounds. Such decisions thus seem clearly to involve constitutional questions, and this view seems to harmonize with that presented in Elliott on Appellate Procedure, section 33, where it is said: "It must fairly appear that a constitutional question is in the record, and that the party who assumes to make the question has a right to do so, but these things need not conclusively or even decisively appear, for if it appears, from an inspection of the record, that there is reason for inferring or adjudging that the record does present a constitutional question, jurisdiction is in the Supreme Court.

If it were held otherwise, it might deprive a party of the right to a decision by the Supreme Court, since it would leave the question whether the validity of a statute is involved to the Appellate Court and its decisions would shut off the right of a party to invoke the judgment of the tribunal to which jurisdiction over such questions is committed."

In seeking the true interpretation of the statute in ques tion, rules of statutory construction must be observed, one of which is that a statute will never be so construed as to make it conflict with any constitutional provision, if the terms used by the legislature are susceptible of a meaning, and reconcilable to a view, that are consistent with the organic law. That a certain construction or interpretation of a statute will make its operation and effect violative of a constitutional right, or put it under the ban of a constitutional inhibition, is an admonition to the court that the construction is wrong, if the statute is susceptible of a construction that will make it valid. *Slack v. Jacob*, 8 W. Va. 612; *State v. Workman*, 35 W. Va. 267; *Bridge v. Kanawha Co.*, 41 W. Va. 658; *Robey v. Sheppard*, 42 W. Va. 286. This rule is founded upon two presumptions. One is that the legislature intended the statute to be operative and effective. This implies the other, that the legislature knows the limitations upon its power, imposed by the organic law.

The statute under consideration here extends to foreign corporations the privilege of transacting business in this State, upon complying with certain conditions therein prescribed, and imposes a penalty for doing business in the State without having first complied with them. It was construed by this Court, before it was amended, by the Act of 1901, in *Teledo Tie & L. Co. v. Thomas*, 33 W. Va. 566, and held not to have the effect of invalidating contracts made in this State by foreign corporations which had not complied with the requirements of the statute. For reasons which will be hereinafter stated, such corporations must have had the right to sue in respect to such contracts, for a remedy for the enforcement of a contract is an essential part of the contract itself. The decision referred to above recognized such right to sue and enforced it.

Regarding the amendment made by section 31 of chapter 35 of the Acts of 1901 as having wrought a material change in the section, the circuit court has adopted the view that it now forbids the transaction of business in the State by foreign corporations which have not complied with its requirements, invalidates their contracts and denies to them the right to sue. This may be correct as to corporations doing business in the State. Whether it is or not we are not called upon to say. But it does not deny to a foreign corporation not doing business in the State power to make a valid contract here, or to bring and maintain an action for the enforcement thereof.

Prior to the amendment, that portion of the section which has been altered read as follows: "No railroad corporation which has a charter, or any corporate authority, from any other state, shall do business in this State as the lessee of the works, property or franchises of any other corporation or person, or otherwise; or bring or maintain any action, suit or proceeding in this State, until it shall, in addition to what is hereinbefore required, file in the office of the secretary of state a writing, duly executed under its corporate seal, accepting the provisions of this section and agreeing to be governed thereby, and its failure so to do, may be pleaded in abatement of any such action, suit or proceeding; but nothing herein contained shall be construed to lessen the liability of any corporation, which may not have complied with the requirements of this section, upon any contract or for any wrong." The amendment inserts just two words after the word "railroad" at the beginning of the clause quoted, making it read "No railroad or other corporation," instead of "No railroad corporation." The entire section deals with the question of the right of foreign corporations to do business in the State. The clause quoted, before it was amended, was designed to regulate and limit the power of foreign railroad corporations to do business in the State, and did not relate to any other kind of corporations. So much of it as relates to the bringing and maintaining of any action, suit or proceeding, is limited and restrained in its effect, not only by the general context, the subject matter and spirit of the section, but also by its immediate context doing "business in this State as the lessee of the works,

property or franchises of any other corporation or person
or otherwise." One portion of it deals with the right to con-
tract and the other with the incidental right of rem-
edy for the enforcement of the contract. Statutes for-
bidding the right to institute and maintain actions, except
as a means of enforcing compliance, by foreign corporations,
with statutory conditions precedent to the right to do bus-
iness in the State, are seldom, if ever, found in any state,
and when used for this purpose they do not withhold from
a corporation, which has failed to comply with such condi-
tions, the right to sue for the enforcement of contracts
made before the act was passed, or contracts made between
other parties and assigned to them, or contracts made by
them without the State. 19 Cyc. 1301. "Unless the
statute says so in express terms, as some of the statutes
do, the non-compliance by a foreign corporation with the
terms and conditions upon which the domestic law allows it
to enter the State and do business, will not preclude it,
or any one claiming through it, from maintaining an action
which is purely *ex delicto.*" 19 Cyc. 1304. Reference is
made to these general principles to show that the construc-
tion contended for by counsel for the defendant in error
carries the statute entirely beyond the scope of the general
system of law to which it belongs. Moreover, the inhibi-
tion to sue shows on its face that its only purpose is to en-
force compliance with the conditions precedent to the right
to do business in the State. Hence there is no warrant in
the letter of the statute for its enforcement for other pur-
poses.

The carrying on of such commercial transactions in one
state by a foreign corporation of another, having no place
of business in the State in which they take place, as are gov-
erned by the principles of interstate commerce law, does not
constitute doing business in the State. "Where a portrait
company, carrying on business in one state obtains orders
through an agent in another state for pictures and frames,
the fact that in filling the orders it ships the pictures
and frames in separate packages, for convenience in packing
and handling, to its own agent, who places the pictures in
their proper places or frames and delivers them to the person
ordering them, does not deprive the transaction of its

character of interstate commerce or take it out of the statutory protection of the commerce clause of the Federal Constitution." *Caldwell* v. *North Carolina,* 187 U. S. 622. In the case just quoted from, the state court adopted the view that the portrait company was doing business in North Carolina and therefore not entitled to the immunity from taxation, guaranteed by the federal constitutional provision relating to interstate commerce. In its opinion that court said: "And the question is, could the Chicago Portrait Company, because it was a foreign corporation, engage in the business of completing these pictures, and in selling and delivering them in Greensboro, without becoming liable to a city tax, for which its own citizens would be liable. It seems to us that it could not." But the Supreme Court of the United States, in order to reverse the decision of the state court, was driven to the conclusion that the portrait company was not doing business in the state of North Carolina. This is apparent from the following language of the opinion: "But we are not disposed to concede that, under the facts of this case, the pictures were, in any proper sense, incomplete when received in Greensboro. That the frames and pictures were in separate packages, if such was the case, was merely for convenience in packing and handling, and 'placing the pictures in their proper places,' (the language of the verdict,) meant that each picture was placed in the frame designed for it. The selection of the frame was as much a part of the purchase and sale as the selection of the picture." If the portrait company had been doing business in the State in the sense of maintaining a factory, office or store therein, at which the contracts of sale had been made and the goods delivered, it might have been deemed to have been doing business in the state and to have subjected itself to the liabilities of domestic corporations, and limited its rights to those of such corporations, and thereby to have deprived itself of the immunities incident to interstate trade under the federal constitutional guaranty. This conclusion and result was avoided by the Federal Supreme Court by holding that the mere shipment of the goods in separate packages to itself in Greensboro and then putting the pictures in the frames and delivering them did not constitute doing business within the state.

19 Cyc. 1270 says, under the head of "What Constitutes Doing Business," "These prohibitions are leveled against the act of foreign corporations entering the domestic state by their agents, and engaging in the general prosecution of their ordinary business therein, and they do not apply therefore to acts not constituting any part of their ordinary business." At page 1272 the same authority says: "Statutes of the kind under consideration have no application to the case where a corporation sends into the restricting state its traveling agent who solicits orders for its goods and forwards them, subject to approval, to the home office, the orders being afterwards filled by shipments to the customer. Such an application of the statute would be inadmissible in so far as state statutes are concerned, because, so applied, it would have the effect of imposing a restrainst upon commerce between the states or with foreign countries."

That a statute, intended to place restraint upon such transactions, in the form of an inhibition to sue, or otherwise, would be unconstitutional and void is established by the decisions of all the courts without any exception, and especially by the Supreme Court of the United States. *Robins* v. *Shelby County*, 120 U. S. 489, says: "Interstate commerce cannot be taxed at all by a state, even though the same amount of tax should be lain on domestic commerce, or that which is carried on solely within the state." To the same effect see the following cases: The *State Freight Tax*, 15 Wall. 232; *Welton* v. *Missouri*, 91 U. S. 275; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburg* v. *Hennick*, 129 U. S. 141; *Lyng* v. *Michigan*, 135 U. S. 161; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Brennen* v. *Titusville*, 153 U. S. 289; *Stockard* v. *Morgan*, 185 U. S. 27. That a state cannot interfere with such transactions by denying the right to sue for the property sold is equally well settled. *Hovey's Estate*, 198 Pa. 385; *Bateman* v. *Milling Co.*, 20 S. W. 931; *Reed & Barton* v. *Walker*, 21 S. W. 687; *American Starch Co.* v. *Bateman*, 22 S. W. 771; *Manufacturing Co.* v. *Foster*, 4 Dak. 329; *National Cash Register Co.* v. *Wilson*, 81 N. W. 285; *Lumber Co.* v. *Holbert*, 5 App. Div. (N. Y.) 559; *Railway Co.* v. *Fire Association*, 55 Ark. 163, 174; *Lumber Co.* v. *Improvement*

*Association*, 55 Ark. 625; *Richardson* v. *Mortgage Co.*, 194 Ill. 259; *Lumber Co.* v. *Chappel*, 184 Ill. 539; *Miller* v. *Williams*, 27 Colo. 34. See the text and long list of decisions to the same effect in 19 Cyc. 1280, note 13.

In view of such consequences, the rule of construction, hereinbefore referred to, demands that the language of a statute, restricting the right to sue, be limited in its application to transactions which are not within the protection of the federal law relating to interstate trade and commerce.

For the reasons stated, the judgment complained of must be reversed, the motion to strike out the special plea sustained, said plea stricken out, and the case remanded for further proceedings according to law.

<div align="right">

*Reversed. Remanded.*