# CHARLESTON.

STATE *ex rel.* J. W. HARMON *v.* BOARD OF CANVASSERS, ETC.
STATE *ex rel.* J. F. NAPIER *v.* BOARD OF CANVASSERS, ETC.

Submitted January 12, 1921. Decided January 18, 1921.

1. OFFICERS—*One Failing to File Expense Account is Not Permanently Disqualified From Holding Office.*

   Although sections 8-b (6) and 8-b (8), chapter 5, Code 1918, exact promptness in the preparation and delivery of the expense account of every candidate for public office, the statute, when read and considered in its entirety, manifests no express or implied determination to disqualify permanently one who is tardy in that respect from discharging the functions and receiving the emoluments of the office to which he has been elected, but only until he has filed the required statements. (*State ex rel. J. H. Hall* v. *County Court of Gilmer County et al.*) (p. 474.)

2. SCHOOLS AND SCHOOL DISTRICTS—*Term of Office of Appointee to Fill Vacancy Expires Upon Qualification of Successor.*

   Where a general election is held before the expiration of the term of office of a commissioner of a board of education and a vacancy occurs in said office before said general election, the term of office of the incumbent appointed by the county superintendent of free schools under sec. 43, ch. 2, Acts 1919, to fill the vacancy, expires at such time after the next general

election as the person elected to fill such vacancy shall be
qualified. (p. 474.)

Separate proceedings for writs of mandamus by the State,
on relation of J. W. Harmon and of J. F. Napier, against the
County Court of Wayne County sitting as a board of canvassers.
*Peremptory writs of mandamus awarded.*

*J. H. Meek* and *P. H. Napier,* for realtors.

*J. M. Rigg* and *C. W. Ferguson,* for respondent.

LIVELY, JUDGE:

Petitioner J. W. Harmon, having received a substantial ma-
jority of the votes cast by the electors of Ceredo District, Wayne
County at the general election held on November 2, 1920 for
the office of commissioner of the board of education for that dis-
trict, as shown by the declaration and result of said election.
for that office made by the county court of said county sitting
as a board of canvassers, was refused a certificate by said board
of canvassers.  He was a candidate for that office on the re-
publican ticket and received 581 votes, the democratic nominee,
Perry J. Stealey having received 355 votes for said office.  Upon,
Harmon's petition to this court an alternative writ of manda-
mus was issued against the members of the county court, J. W.
Crabtree, Thos. Porter and H. W. Thompson, and *ex officio*
members of the board of canvassers, on the 6th day of Decem-
ber, 1920, to issue and deliver to petitioner said certificate of
election or show cause.  The board of canvassers and the sev-
eral members undertake to justify the refusal upon the follow-
ing grounds:

(1)   That Harmon failed to file with the clerk of the county
court the financial statements in connection with his candidacy
for the nomination.

(2)   That he failed to file with said clerk the financial state-
ment required by the Corrupt Practices Act before the general
election.

They admit that on or about the 26th of November, 1920,
Harmon did make out and file with the said clerk a financial
statement, but contend that the filing thereof was not within
the time prescribed by the statute.

Napier was the republican candidate at said election to fill out an unexpired term for the office of commissioner of the board of education of the same district, which unexpired term ended July 1, 1923, and received a substantial majority of the votes cast at said election over the democratic candidate for that office, Mr. W. H. Purdue. The board of canvassers ascertained and declared by its record that he had received a majority of the votes but refused to issue him a certificate of election. To the alternative writ of mandamus issued upon his petition the members of the board of canvassers made like return and answer as to the petition of Harmon; but in addition thereto they allege that there was no vacancy to be filled; that S. F. Plymale was elected to fill that office at the general election in 1918 for a four year term ending on July 1, 1923, and resigned about the 1st of July, 1919, and that G. P. Smith was duly appointed to fill the vacancy on July 5, 1919, by the county superintendent of free schools, pursuant to section 43, ch. 2, Acts 1919, and that said appointment was by operation of law for the unexpired term ending in 1923; that said Smith moved out of the district after the November election, created a vacancy thereby on November 5 and Mrs. P. E. Burt was appointed to fill the vacancy on November 24, 1920.

The defenses raised and relied upon in both these cases, relating to the failure to properly make and file the financial statements required by the Corrupt Practices Act, both before and after the elections, has been disposed of by the holding and principles announced in the case of *State ex rel. J. H. Hall* v. *County Court of Gilmer County et al.,* handed down at this term. Therefore the only question to be considered is that arising in the Napier case, raised by the answer and return, as to whether or not the appointment of G. P. Smith by the county superintendent to fill out the unexpired term caused by the resignation of S. F. Plymale was by operation of law for the unexpired term ending in 1923 or until such time after the general election in November, 1920, when the person elected to fill the vacancy had qualified; in other words, whether or not there was a vacancy in the office to be filled by the voters at the election.

Section 43, ch. 2, Acts 1919 provides: "Vacancies in the office

of school commissioner or president shall be filled by the county superintendent of schools." This simply designates the authority by which such vacancies shall be filled. It is silent as to whether the appointment to fill the vacancy shall be for the unexpired term or until the next general election. Therefore it is necessary to consider, and to construe the general laws on filling vacancies in office.

Section 7 of Article 4 of the Constitution in part reads: "When vacancies occur prior to any general election, they shall be filled by appointments in such manner as may be prescribed herein, or by general law, which appointments shall expire at such time after the next general election as the person so elected to fill such vacancy shall be qualified." And section 8 of the same Article reads: "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." It is urged that section 8 of Article 4 directs the legislature to provide, by general laws, the term for which the appointee to fill a vacancy in an elective office may serve. We do not so decide. The legislature may fix the term of an office, not provided for in the Constitution, prescribe the powers, duties and compensation and the manner of election, appointment and removal. The word "manner" used in section 8 of Article 4 as construed in *Bridges* v *Shallcross,* 6 W. Va. 562, relates to the agent or person who may appoint, as well as the formality with which it should be done. But where a vacancy occurs in an office to be filled by the electorate, prior to any general election, whether the provisions of section 7 or whether the provisions of sec. 8 are controlling, we do not decide, as it is not a question necessary to the decision of this case. The general laws governing the filling of vacancies, read in connection with sec. 43, ch. 2, Acts 1919, and properly construed, will determine this contention of vacancy in the office of commissioner of the board.

Section 1, ch. 4, Code, 1918, directs that "Elections to fill vacancies shall be for the unexpired term." This is in consonance with Art. 4, sec. 7, and contemplates that there shall be

elections to fill vacancies in elective offices; but the latter part of sec. 1 of ch. 7 of the Code provides: "When an officer is elected or appointed to fill a vacancy, his term shall be as prescribed by the first section of the fourth chapter of this Code." It is suggested that whenever there is an appointment to fill a vacancy in an elective office the appointment shall be made "for the unexpired term," by force of these two provisions of the general laws. If that be true, there never could be an election to fill a vacancy in an office. If a vacancy occurs before a general election and the term of the office expires at some stated period after that election, and the appointee to fill the vacancy should by virtue of this law hold until the expiration of the term, then, as above suggested, there could be no election to fill the vacancy. To hold that vacancies in elective offices shall be filled for the unexpired term, would render that part of sec. 1, ch. 4, of the Code above quoted, and possibly that part of sec. 7, Art. 4 of the Constitution abortive. How then shall sec. 1, chap. 7 be construed? It was evidently intended to mean that where the vacancy was in an elective office the appointment should be until the next general election, but where the vacancy occurs in an appointive office, such as commissioner of banking, tax commissioner and the like, the appointment shall be for the unexpired term. Under this construction no violence is done to the Constitutional provision, the two acts harmonize with each other and with the Constitution, and vigor is given to each. Under the well known rule of statutory construction every statute must be given such construction as to enable it to have effect, and be in harmony with the Constitution. *Bridge Co.* v. *County Court,* 41 W. Va. 658.

The general policy of representative government, where the officers, the servants of the people, are selected by election, is that the electorate shall have the right and opportunity of selecting officers to fill vacancies in elective offices. At least that is the policy of this state as evidenced by its Constitution and general laws. A vacancy in the office of governor, if occurring more than forty days preceding a general election, shall be filled at such election. Similar provisions are made for filling vacancies in the office of auditor, treasurer, superintendent of schools and the attorney general. The same is true as to the

members of the judiciary; and generally in all of the county offices, including justices of the peace and constables.

For the reasons stated, in *State ex rel. Hall* v. *County Court,* handed down by LYNCH, Judge, at this term, and for the reasons herein given, we are of the opinion that the relators are each entitled to the peremptory writ, and we award it to each of them.

*Peremptory writs of mandamus awarded.*