STATE OF WEST VIRGINIA *ex rel.* ROGER SLATTON

*v.*

OTTO C. BOLES, WARDEN, WEST VIRGINIA PENITENTIARY

(No. 12204)

Submitted January 9, 1963.          Decided April 2, 1963.

*Arthus Ritz Kingdon,* for relator.

*C. Donald Robertson,* Attorney General, *J. Patrick Bower,* Assistant Attorney General, for respondent.

CAPLAN, JUDGE:

Roger Slatton, the relator in this proceeding, invoked the original jurisdiction of this Court by filing herein his petition praying for a writ of habeas corpus ad subjiciendum. On December 5, 1962, the writ was issued, returnable January 9, 1963, and counsel was appointed to represent the relator. On the return day the Attorney General, appearing for the respondent, produced the relator and filed a return and a demurrer to the petition. The case thereupon was submitted for decision upon the pleadings heretofore noted and upon the briefs of the parties.

On November 29, 1960, the Department of Public Welfare, proceeding under the provisions of Chapter 49, Article 5 of the Code of 1931, as amended, filed its verified petition in the Juvenile Court of Wyoming County, it being the circuit court of said county, requesting that Roger Slatton be

adjudged a delinquent and dealt with as provided by law. The petition upon which the relator herein was sought to be committed stated the following: "Is incorrigible, ungovernable, or habitually disobedient and beyond the control of his parents, guardian, or other custodian. Larceny of one rifle and four shotguns from Easters Service Station."

The Judge of the Circuit Court of Wyoming County, acting in his capacity as the juvenile court judge, after a hearing on the aforesaid petition, entered an order finding the defendant (Slatton) guilty of juvenile delinquency. Slatton was thereupon committed to the custody of the West Virginia Board of Control (now Commissioner of Public Institutions), directing that he be assigned to a forestry camp for a period of two years. The court's order further provided "that if in the opinion of the superintendent of said forestry camp the defendant proves to be an unfit person to remain in said forestry camp, he shall be returned to this court to be further dealt with according to law."

It appears from the stipulation entered into between counsel for the parties in this proceeding and from the stipulation exhibits attached thereto, that on February 20, 1961, an indictment was returned in the Circuit Court of Wyoming County charging the relator with the felonious crime of breaking and entering and the larceny of five shotguns and other items, all of the value of $613.00. This offense was alleged to have been committed on November 1, 1960, and was the same offense for which the relator was adjudged a juvenile delinquent and assigned to the forestry camp.

On March 18, 1961, the superintendent certified Slatton as an unfit person to remain in the camp and returned him to the Circuit Court of Wyoming County to be dealt with according to law. The record in this case is not entirely clear but it appears that Slatton ran away from the camp, was apprehended and was returned to Wyoming County, where he was arraigned on the aforesaid indictment. It further appears from the record that on March 28, 1961, the relator, appearing in person and by his counsel, entered a plea of guilty to the offense of breaking and entering as charged in the indictment. Thereupon he was sentenced to

confinement in the West Virginia State Penitentiary at Moundsville for the indeterminate period of one to ten years.

It was stipulated and agreed by the parties, through their respective counsel, that the relator, Roger Slatton, was born on November 18, 1944. Since the indictment returned against him on February 20, 1961, charged him with the commission of a crime on November 1, 1960, it is conclusive that he had not yet reached his sixteenth birthday when the violation of law occurred.

The relator, now an inmate in the state penitentiary, seeks this relief, claiming that the sentence under which he is serving is null and void. He contends that the Circuit Court of Wyoming County lacked jurisdiction to sentence him since he was under the age of sixteen years at the time of the commission of the offense.

In this proceeding we are confronted with the following question: Does a circuit court have jurisdiction to indict, try, convict and sentence a person for a criminal offense if such person, when the crime was committed, was under the age of sixteen years? It is the position of the relator that, in view of the provisions of our statutes, relating to child welfare, such jurisdiction does not exist. The respondent, on the other hand, asserts, among other things, that such interpretation of Chapter 49 of the Code of 1931, as amended, would render the pertinent child welfare acts unconstitutional as violative of Article VIII, Section 12 of the West Virginia Constitution.

The pertinent language of that constitutional provision is quoted as follows: "* * * They [circuit courts] * * * shall have original and general jurisdiction * * * of all crimes and misdemeanors." In deciding the basic question stated above we are called upon to determine whether this constitutional provision precludes our legislature from establishing juvenile courts with exclusive jurisdiction over infants under sixteen years of age, who are charged with the commission of a criminal offense.

Here we are concerned with the commission of an offense by a person under the age of sixteen years which, if committed by an adult, would unquestionably be a crime. In the field of law pertaining to the custody and control of juveniles there has developed, and such development continues, a comparatively new concept of jurisprudence. Though this development, as it relates to statutory law, is of fairly recent vintage, the basis therefor is of ancient origin.

From the earliest time infants were regarded as entitled to special protection from the State. See 27 Am. Jur. 822, Infants, Section 101. In early English law, under the doctrine of *parens patriae,* the King was considered the parent or protector of all orphaned or dependent children within the realm. Since, in our country, the prerogatives of the crown devolved on the people of the states, the State, as a sovereign, now stands in the situation of *parens patriae.* *Jensen* v. *Sevy,* 103 Utah 220, 134 P. 2d 1081; *Helton* v. *Crawley,* 241 Iowa 296, 41 N. W. 2d 60. This doctrine expresses the inherent power and authority of the State to provide protection of the person and property of a person *non sui juris.* In the execution of such doctrine the legislature is possessed of the inherent power to formulate such rules and regulations as may be necessary to provide protection for persons of immature years. See 67 C.J.S. 624; *People* v. *Pierson,* 176 N. Y. 201, 68 N. E. 243.

In recognition of these modern sociological precepts many legislatures in the various states have enacted statutes designed to set minors apart and afford to them privileges and immunities not possessed by people as a whole. One result of this trend was the creation of the juvenile court. The need therefor was recognized and, in 1899, in Cook County, Illinois, the first juvenile court was established. With comparative rapidity this action was followed in other states, and it can now be said that the juvenile court exists in every state of the Union, either as a separate court or as an arm of a legally established tribunal. These enactments, as a matter of fact, do not create a new method of treatment of juveniles, but, in essence, constitute the embracement of

the ancient doctrine of *parens patriae*. "The Juvenile Court act is a codification of the ancient equitable jurisdiction over infants, under doctrine of parens patriae, exercised historically by courts of chancery, which representing government, exercised jurisdiction over person and property of infants to insure that they were not abused, defrauded, or neglected." *People ex rel. Houghland* v. *Leonard*, 415 Ill. 135, 112 N. E. 2d 697. See also 31 Am. Jur. 297, Juvenile Courts and Delinquent, Dependent and Neglected Children, Section 5.

In 1915 the West Virginia Legislature, by Chapter 70 of its acts, passed a law pertaining to dependent, neglected or delinquent children. This statute defined and provided for the care and control of delinquent children. Its enactment was an obvious expression of the intention of our lawmakers to join the then modern sociological trend by the codification of the doctrine of *parens patriae*. This intention to afford special protection to persons of tender years becomes even more clear upon examining the following language of that act: "The words 'delinquent child' shall mean any male or female child who, while under the age of eighteen years, violates any law of this state; * * *. Any child committing any of these acts shall be deemed a delinquent child and when proceeded against such proceedings shall be on behalf of the state, in the interest of the child and the state * * * and to that end the child shall be dealt with, protected and cared for in any circuit court or other court having chancery jurisdiction, as a ward of the state * * *."

This Court, commenting on that statute, just three years after its enactment, said: "The act plainly discloses an intention to enlarge and reinvigorate the jurisdiction which courts of chancery have exercised from time immemorial to protect the financial, social and moral welfare of infants within their jurisdiction, and to extend to them the parental care of the state; * * *." *State ex rel. Hall* v. *County Court*, 82 W. Va. 564, 96 S. E. 966.

Although our child welfare laws have been amended many times since 1915, the underlying principles upon which they were established have not changed. The welfare of

the child is still the basic consideration. The legislature of this State has long endeavored, by statutory enactment, to separate, with respect to definition, trial and punishment, the misdeeds of children from public offenses by adults.

Against this background, let us examine some of the pertinent child welfare statutes enacted by the legislature and now in force and effect. Code, 49-1-4, as amended, defines delinquent child in the following manner: " 'Delinquent child' means a person under the age of eighteen years who: * * * (2) Commits an act which if committed by an adult would be a crime not punishable by death or life imprisonment; * * *." Code, 49-5-15, as amended, provides that no child under sixteen years of age shall be committed to a jail or police station. In Code, 49-7-3, as amended, it is provided: "Any evidence given in any cause or proceeding under this chapter, or any order, judgment or finding therein, or any adjudication upon the status of juvenile delinquent heretofore made or rendered, shall not in any civil, criminal or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatsoever except in subsequent cases under this chapter involving the same child; nor shall the name of any child, in connection with any proceeding under this chapter, be published in any newspaper without a written order of the court; nor shall any such adjudication upon the status of any child by a juvenile court operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any such adjudication operate to disqualify a child in any future civil service examination, appointment, or application."

More cogently related to the case under consideration are the following provisions of the Child Welfare Act. Code, 49-5-3, as amended, provides: "Except as to a violation of law which if committed by an adult would be a capital offense, the juvenile court shall have exclusive jurisdiction to hear and determine criminal charges including a charge of violation of a municipal ordinance, against a person who

is under eighteen years of age at the time of the alleged offense.

"If during the pendency of a criminal proceeding against a person in a court other than a juvenile court, it shall be ascertained, or it shall appear, that the person was under the age of eighteen years at the time of the alleged offense, the court, judge or magistrate shall immediately transfer the case with all the papers, documents, and testimony connected therewith to the juvenile court having jurisdiction. The juvenile court shall proceed to hear and dispose of the case in the same manner as if it had been instituted in that court in the first instance; * * *."

Concerning the disposition by the court, Code, 49-5-14, as amended, directs: "With a view to the welfare and interest of the child and of the state, the court or judge may, after the proceedings, make any of the following dispositions: * * *

"(3) If the child be over sixteen years of age at the time of the commission of the offense the court may, if the proceedings originated as a criminal proceeding in a court other than a juvenile court, enter an order transferring the case back to the court of origin, or to any court in the county having criminal jurisdiction; or if the case originated on petition in juvenile court, the court may enter an order showing its refusal to take jurisdiction and permit the child to be proceeded against in accordance with the laws of the State governing the commission of crimes or violation of municipal ordinances; * * *."

It is noted that under the provisions of Code, 49-5-3, as amended, the juvenile court is given exclusive jurisdiction, except for a capital offense, to determine criminal charges against a person under eighteen years of age at the time of the offense. The trial of a minor relative to criminal charges relates to a trial on the charge of juvenile delinquency. This was aptly stated in Point 3 of the syllabus in *State ex rel. Hinkle* v. *Skeen, Warden,* 138 W. Va. 116, 75 S. E. 2d 223, as follows: "The exclusive jurisdiction granted to juvenile courts by Code, 49-5-3, as amended, dealing with

trials of persons under eighteen years of age, charged with having committed criminal offenses, relates only to trials of such persons as to charges of juvenile delinquency, not to trials and punishment for criminal offenses." So, although the statute refers to criminal charges, the actual jurisdiction of the court relates to juvenile delinquency. In the instant case the relator, having committed a non-capital offense, was properly under the jurisdiction of the juvenile court.

It is further noted that under said Section 3, the court, other than a juvenile court, if it appears that the person charged is under eighteen years of age, shall immediately transfer the case to the juvenile court. Under Section 14 of the same chapter and article it is provided that if the child be over sixteen years of age he may be transferred back to the court of origin. We believe it is pertinent to the question involved that no provision is made for returning to, or trying a child under the age of sixteen years in, the criminal court. In other words, under the provisions of Code, 49-5-3 and 14, as amended, a person under eighteen years of age must be transferred to a juvenile court; if he is between sixteen and eighteen years of age he may be transferred back to the criminal court; but no provision whatever is made for a person under the age of sixteen years to be tried in a criminal court.

These Code provisions obviously reflect the intention of the legislature to separate, with respect to definition, trial and punishment, the wrongful acts of children from the criminal acts of adults. With the exception of capital offenses, the legislature has said that a child under sixteen years of age can not be guilty of a crime but can be guilty only of juvenile delinquency.

It is well established in this and other jurisdictions that statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia*. All statutes *in pari materia* should be read and construed together, the primary purpose being to ascertain the intention of the legislature. *State ex rel. Graney* v. *Sims*, 144 W. Va. 72, 105 S. E. 2d 886; *State ex rel. Schroath* v. *Condry*, 139 W. Va. 827, 83 S. E. 2d 470; *Vest, et al.* v. *Cobb*, 138 W.

Va. 660, 76 S. E. 2d 885; *State* v. *Hoult*, 113 W. Va. 587, 169 S. E. 241. See 17 M. J. 293, Statutes, Section 40.

The above cited and quoted statutes are *in pari materia* and, when read together, constitute a clear legislative mandate that a child under sixteen years of age, except for a capital offense, is incapable of committing a crime.

The provisions of Code, 49-1-4, 49-5-15 and 49-7-3, all as amended, when read together, reveal a clear legislative intent to separate completely the punishment allotted to a juvenile from that imposed upon an adult, even though the offense, if a non-capital offense, committed by each, may have been the same. The procedure set out in Code, 49-5-3, as amended, and Code, 49-5-14, as amended, when read together, provides no manner whatever in which a person under the age of sixteen years can be tried in a court other than a juvenile court. Thus, the legislature, in effect, has declared that reclamation rather than punishment shall be the basis for the treatment of those persons under sixteen years of age who have violated our laws.

That the legislature has the power to create and define crimes is well established in this jurisdiction. *State* v. *Painter*, 135 W. Va. 106, 63 S. E. 2d 86; *State* v. *Harrison*, 130 W. Va. 246, 43 S. E. 2d 214; *Cohn* v. *Ketchum*, 123 W. Va. 534, 17 S. E. 2d 43; *State* v. *Woodward*, 68 W. Va. 66, 69 S. E. 385; *State* v. *Wamsley*, 68 W. Va. 103, 69 S. E. 475. This power of the legislature is subject only to the limitations imposed by the State and Federal Constitutions. *State* v. *Harrison, supra; State* v. *Woodward, supra.* An examination of those documents fails to reveal the existence of any such limitations.

Under this power the legislature has declared that a juvenile below the age of sixteen years shall be deemed incapable of the commission of a crime, other than a capital offense, nor shall he be punished therefor as a criminal. Except for a capital offense, it has removed persons of such age group from the province of the criminal laws of this state.

The legislature has, by the enactment of the provisions of Chapter 49, Code, 1931, as amended, classified juveniles by age for the purpose of dealing with them as delinquent persons. "That minors may be classified for their best interests and the public welfare has never been questioned in the legislation relating to them." *Commonwealth* v. *Fisher*, 213 Pa. 48, 62 A. 198. See also *State ex rel. Foot* v. *District Court*, 77 Mont. 290, 250 Pac. 973, 49 A.L.R. 398; *State* v. *Burnett*, 179 N. C. 735, 102 S. E. 711; and *Moore* v. *Williams*, 19 Cal. App. 600, 127 Pac. 509. Legislatures have long classified minors when it has been deemed for their best interest and in the interest of the public. Laws creating statutory rape, acts forbidding certain employment under a specified age, and legislation prohibiting the sale of intoxicating liquors to minors are a few of the many examples in which minors have been classified by age. Such classification is not precluded by the State or Federal Constitutions, and what has not been therein prohibited the legislature may enact.

It is urged by the respondent in this case that the legislature did not intend, by the provisions of Code, 49-5-3 and 49-5-14 (3), both as amended, that one under sixteen years of age when the offense was committed be treated only as a juvenile delinquent until he attained the age of twenty one years. He further asserts that if it did so intend, its act does violence to Article VIII, Section 12 of the West Virginia Constitution, and is unconstitutional. With these assertions we can not agree. Our views as to the intention of the legislature in enacting the child welfare statutes have been stated.

As to the constitutionality of the pertinent statutes, we are in accord with the view which has long prevailed in this and other jurisdictions. That firmly established rule of statutory construction is that when a statute is susceptible of two constructions, one of which is, and the other of which is not, violative of a constitutional provision, the statute will be given that construction which sustains its constitutionality unless it is plain that the other construction is required. Furthermore, every reasonable construction will be resorted

to by the Court to sustain its constitutionality, and any doubt will be resolved in favor of the validity of the statute. *Walter Butler Building Company* v. *Soto,* 142 W. Va. 616, 97 S. E. 2d 275; *Bennett* v. *Bennett,* 135 W. Va. 3, 62 S. E. 2d 273; *State ex rel. Cosner* v. *See,* 129 W. Va. 722, 42 S. E. 2d 31; *State ex rel. Harmon* v. *Board of Canvassers,* 87 W. Va. 472, 105 S. E. 695; *Kimball* v. *Loughney,* 70 W. Va. 765, 74 S. E. 953; *Underwood Typewriter Co.* v. *Piggott,* 60 W. Va. 532, 55 S. E. 664; *Charleston & S. Bridge Co.* v. *Kanawha County Court,* 41 W. Va. 658, 24 S. E. 1002; *Slack* v. *Jacob,* 8 W. Va. 612. See also 17 M. J. 273, Statutes, Section 29, and 50 Am. Jur., Statutes, Sections 170, 171, 195.

Accordingly, we hold that the legislature intended to treat juvenile offenders, under the age of sixteen years, as delinquents rather than criminals and that any doubt as to the constitutionality of its acts is resolved in favor of the validity thereof. This does not deprive the circuit courts of "original and general jurisdiction * * * of all crimes and misdemeanors". Rather, it gives effect to the intent of the legislature to remove from the sphere of criminal law, except for a capital offense, all juveniles under the age of sixteen years.

For a thorough and learned discussion regarding the treatment of juveniles under the age of sixteen years, see *State* v. *Monahan,* 15 N. J. 34, 104 A. 2d 21, 48 A.L.R. 2d 641. In that case a fifteen year old boy had participated, with his father, in a robbery, during which the father killed two persons. The boy was prosecuted for murder. A New Jersey statute, NJS 2A, 85-4, NJSA, provides: "A person under the age of 16 years is deemed incapable of committing a crime." In the lower court the defendant, relying on the above quoted statute, made a motion to transfer the case to the juvenile court. This motion was denied. The Supreme Court of New Jersey, in a well reasoned opinion, reversed the decision of the lower court, saying that the legislative direction that children committing acts which would be criminal if committed by adults shall be dealt with exclusively by specialized juvenile courts, may not be judicially disregarded.

It is interesting to note, and is pertinent to this proceeding, that the Standard Juvenile Act as revised in 1949 (New Jersey), in addition to vesting exclusive jurisdiction over all children under sixteen years of age in the juvenile court, also provides for jurisdiction between the ages of sixteen and eighteen years. It further provides that if a child over sixteen is charged with an offense which would be a felony if committed by an adult, the juvenile court may, in its discretion, certify the child for criminal proceedings. It also directs that "no child under sixteen years of age shall be so certified."

We are of the firm opinion that the effect of the West Virginia statutes pertaining to juveniles, even though not couched in as clear and direct language, is the same as that expressed in the juvenile laws of New Jersey. The effect is the same as if our legislature had expressly declared that no child under sixteen can be charged and tried in a criminal court for a non-capital crime.

It having been determined herein that the Circuit Court of Wyoming County lacked jurisdiction to sentence this relator to confinement in the penitentiary, such sentence is hereby declared void. One so imprisoned in consequence of a void sentence may obtain his release from such imprisonment by a habeas corpus proceeding. *State ex rel. Foster* v. *Boles, Warden,* decided March 19, 1963; *State ex rel. Firestone* v. *Adams, Warden,* 145 W. Va. 194, 113 S. E. 2d 836; *State ex rel. Browning* v. *Tucker, Warden,* 142 W. Va. 830, 98 S. E. 2d 740.

In view of our holding that the juvenile court has exclusive jurisdiction over non-capital offenses committed by juveniles under the age of sixteen years, we deem it unnecessary to consider any further issues raised in this proceeding. Nothing herein shall be construed to prevent the Juvenile Court of Wyoming County from exercising jurisdiction over this relator as provided by law.

*Writ awarded;*
*prisoner discharged.*