BOARD OF REGENTS OF THE, University of Wisconsin System
Your December 8, 1972, resolution adopts a revised audit policy for the University of Wisconsin System and solicits my opinion regarding the policy's legality.
The new policy permits Wisconsin residents under age 65 to audit any credit course "at a cost of 50% of that fee charged a Wisconsin resident who would take that course at the particular Unit for credit," and eliminates audit fees entirely for Wisconsin residents "over 65 years of age." I am given to understand that the objectives of the new policy are to promote a wider utilization of existing and available university resources by making them more accessible to potential auditors. A survey of all university campuses indicates *Page 2 
that, in general, residents have not availed themselves of auditing opportunities in great numbers, and that the number of auditors over the age of 65 is very small. The fiscal impact of the new policy will apparently be negligible.
I believe authority for adoption of the new policy exists under the legislature's grant of "all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law [for the University] * * *" (s. 36.03 (1), Stats.).
Among the duties "prescribed by law" is the broad mandate to "enact laws for the government of the university in all its branches" (s. 36.06 (1), Stats.). As construed by the Wisconsin Supreme Court, this mandate is comparable to the last clause of U.S. Const., Art. I, Sec. 8, which gives the congress power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers." So construed, the statute empowers the regents "* * * to choose the means which in their judgment are necessary or convenient, provided only they are calculated to accomplish the objects sought by the charter and within the scope of the general powers granted, and not in conflict with the statute. * * *" State ex rel. Priest v. Regents
(1882), 54 Wis. 159, 169-170, 11 N.W. 472.
Having initially observed that the Board of Regents has no powers except as conferred upon it by statute, the court inPriest, supra, nevertheless found that — despite the absence of express statutory authorization — the Board possessed implied power to exact fees from students for admission, instruction and incidental university expenses, except as expressly limited by statute.
No statute today establishes a legislative policy expressly limiting the power of the regents to fix fees to be exacted (if at all) from resident auditors. The only statute which supersedes the authority of the regents in the establishment of student fees is sec. 36.16, Stats., which fixes a minimum non-resident tuition fee, but in all other respects leaves the fee structure to the discretion of the Board.
Some concern may be occasioned by the provisions of sec. 36.16 (1) (c), Stats., which, in addition to establishing a minimum nonresident tuition fee, provides that the Board "* * * may prescribe special rates of tuition for professional and graduate courses and for *Page 3 
teaching extra studies, and for students in the university extension, and summer session divisions. * * *" Such language could conceivably foster the notion that the legislature has thus "pre-empted" the area of fee-setting, or has by such enumeration excluded "special rates of tuition" in programs other than those specifically mentioned. In my opinion, however, no such conclusion is warranted; while the language of the statute is permissive, there is evinced no "absence of belief in the previous existence of the power" to fix fees. State ex rel.Priest v. Regents, supra, 54 Wis. at 168-169.
Furthermore, if it were to be assumed that such legislative grants negated the existence of all other implied powers, the Board would be stripped of virtually "all the powers necessary or convenient" (sec. 36.03 (1), Stats.), to govern the university.
It cannot be assumed that the legislature has intended, by ch. 36 of the Statutes, to exclude by silence all powers not specifically conferred therein. As the Court said in the Priest
case, supra, "It would be altogether impracticable to prescribe by statute the numerous and varying duties of [the Board]."54 Wis. at 166.
I am likewise satisfied that the Board possesses the authority (although not expressly conferred by any statute) to adopt the classified fee structure described in the policy resolution, using the age of the auditor as the sole means of classification. The policy seeks to further the university's educational objectives by making existing university resources more readily accessible to a class of persons who, upon passing age 65, generally find themselves with lower incomes and more leisure time. The classification appears to be relevant to the Board's legitimate objective, and for that reason is not in excess of the Board's powers. Adams v. Perry (1871), 43 N.Y. 487, apparently the only American case touching this subject, said of an academy board having general powers similar to those granted in ch. 36:
"* * * the board may fix, and establish such rates therefor as a whole, or for any particular study as shall be in their judgment for the best interests of the institution, and may in their discretion, remit to any particular student, or class ofstudents, the whole, or any part of these charges. This is within the power of all the colleges and academies of the State having charters like the one in question. * * *" (43 N.Y. at 495) (Emphasis supplied) *Page 4 
I find no constitutional infirmity in the proposed classification. While the audit policy discriminates between classes of persons, classification in and of itself is not forbidden by the Fourteenth Amendment's guarantee of "equal protection." If a classification rests upon some reasonable basis, and is relevant to a valid state objective, it is not offensive to the Constitution, even if it "is not made with mathematical nicety, or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co. (1911),220 U.S. 61, 78, 55 L.ed. 369, 31 S.Ct. 337, 340. Furthermore, a classification will not be set aside "if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland
(1961), 366 U.S. 420, 426, 6 L.ed. 2d 393, 81 S.Ct. 1101, 1105.
As I have previously noted in this opinion, the classification made in the audit policy appears to be reasonable and non-invidious, and is relevant to a valid university objective. The fact that age is used as the sole means of classification presents no constitutional obstacle; see Jacobson v. Lenhart
(1964), 30 Ill. 2d 225, 195 N.E.2d 638; People v. Pyle (1960),360 Mich. 249, 103 N.W.2d 597; State ex rel. Slatton v. Boles
(1963), 147 W. Va. 674, 130 S.E.2d 192; Universal Film Exchanges,Inc. v. City of Chicago (N.D. Ill. 1968), 288 F. Supp. 286.
I conclude, therefore, that adoption of the revised audit policy is not in excess of the Board's powers, and that the policy itself does not deny equal protection of the laws.
RWW:SOT